# Egolf, Appellant, *v.* Egolf.

*Divorce—Cruel and barbarous treatment—Evidence.*

A husband is entitled to a divorce from his wife where he shows that she persisted in the use of drugs and intoxicating liquors for years, that whether she was, or was not, under the influence of drug or drink she was abusive, violent and threatening; that she committed many acts of personal assaults on her husband, threatened to do him injury and attempted to take his life; that on several occasions he had to confine her in asylums or retreats, and that by reason of her misconduct he had been compelled to change his residence from different boarding houses and rented dwellings at least sixteen times.

Argued Nov. 12, 1912. Appeal, No. 283, Oct. T., 1911, by plaintiff, from order of C. P. Berks Co., April T., 1911, No. 8, dismissing libel in divorce in case of Harry Egolf v. Elizabeth R. Egolf. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Libel in divorce. Before WAGNER, J.
The opinion of the Superior Court states the case.

*Error assigned* was order dismissing the libel.

*Harvey F. Heinly,* for appellant.—The evidence was sufficient to show cruel and barbarous treatment: Fay v. Fay, 27 Pa. Superior Ct. 328; Barnsdall v. Barnsdall, 171 Pa. 625; Baker v. Baker, 195 Pa. 407; Mason v. Mason, 131 Pa. 161.

*George J. Gross,* for appellee, cited: Hansell v. Hansell, 3 Pa. Dist. Rep. 724; Biddle v. Biddle, 50 Pa. Superior Ct. 30.

OPINION BY ORLADY, J., March 6, 1913:
The parties to this action of divorce were married June 24, 1886, and soon thereafter began housekeeping, continuing to live happily for about two years. A son

was born to them on January 1, 1887. During the summer of 1888, the husband noticed that the wife was becoming addicted to the use of drugs and intoxicating liquors. He remonstrated with her, but she persisted in their use, so that in September, 1909, he had her placed in a sanitarium for the treatment of inebriates. She remained there but a short time, when he was obliged to remove her on account of complaint from the institution relating to her conduct. From April 18, 1888, until February 28, 1911, he was obliged to change his residence from different boarding houses and rented dwellings, at least sixteen times, on account of her persistent and offensive conduct while under the influence of liquor and drugs. They were ordered from a number of boarding houses for this reason alone. He had her confined, under voluntary proceedings, at the Harrisburg State Asylum, from which she was discharged as not being a proper subject for treatment there; again at St. Joseph's Hospital, of Reading, for treatment for the drink habit; then at Mt. Hope Retreat, and finally, on December 17, 1910, at the House of the Good Shepherd, in Philadelphia, where she continued in custody until the hearing in this case, and where she was personally served. Her interests were fully protected by zealous counsel, who appeared in her behalf at the hearing and who represents her on this appeal.

During all these years there was associated with the acts of intoxication and drug influence a series of threats and acts of violence directed toward the husband. She repeatedly threw things at, and threatened to kill him. While he was asleep in an adjoining room she detached a gas fixture in an attempt to commit suicide, and afterward told him, "If I had to kill myself, I was in hopes it would kill you too." On one occasion, on his return from work he discovered her standing behind a door, when she made a jump at him with a knife in her hand, with the statement, "I will kill you, damn you." A number of attempts were made by her to choke him, but he restrained her violence and quieted her by pacific means. She threw various

articles at him accompanied by threats, such as, "I will scratch your eyes out and kill you." And there are a number of instances of similar acts of violence set forth at length in the record.

The husband is a clerk in a railroad locomotive shop, on a salary of $115 per month. The testimony of other witnesses is to the effect that the husband did everything for the wife that could reasonably be expected of a man in his situation. As they expressed it, "she had everything she wanted and he never abused her—he let her talk and have her own way." When under the influence of liquor she was ugly and disagreeable, quarrelsome and violent. On one occasion she said to a friend, "I will kill that Dutchman yet." The expenses at the homes, retreats and asylums were all paid by the husband, and at the time of the hearing he was paying for her maintenance at the rate of $15.00 per month.

It does not clearly appear that the threats and acts of personal violence were confined to the periods of indulgence in drink or drugs. The testimony does show that these conditions were aggravated during such periods of excitement, but it is, as clearly shown that when, so far as the husband knew, the wife was not under the influence of either drug or drink, she was abusive, violent and indulging in threats. It is true that bad temper is not ground for divorce, nor is mere drunkenness, or thriftlessness, or willful neglect of duties. It has never been held that excessive or continued drunkenness is an excuse or justification for such a course of living. The acts or conduct of the wife toward her husband that will entitle the latter to a divorce for cruel or barbarous treatment, must be not only such as to render his condition intolerable or life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means, which do not constitute legal cruelty, his condition is rendered intolerable, this clause of the statute does not apply: Schulze v. Schulze, 33 Pa. Superior Ct. 325.

The record discloses threats of a serious nature that would naturally produce alarm and dread, and continuing through years without any diminution, but rather an increase in their violence. Threats of such character are considered in themselves acts: Jones v. Jones, 66 Pa. 494. The basis of this libel is set out to be "by cruel and barbarous treatment and indignities to libellant's person, renders the condition of said libellant intolerable and life burdensome." As said by RICE, P. J., in Fay v. Fay, 27 Pa. Superior Ct. 328, "It is equally clear both upon principle and authority, that whatever directly tends to show a course of treatment which renders the condition of the libellant intolerable and his life burdensome is admissible in evidence, and in determining whether there was cruel and barbarous treatment within the meaning of the statute, the whole conduct of the wife towards her husband during the period of the alleged ill-treatment should be considered: Barnsdall v. Barnsdall, 171 Pa. 625; Shaw v. Shaw, 36 Pa. Superior Ct. 112. The master finds as a fact that the respondent's conduct since 1888, by reason of the excessive use of liquors and drugs has been such as to cause grief, trouble, annoyance and expense to her husband, but also finds that the respondent has not by cruel and barbarous treatment and indignities to libellant's person rendered the condition of the said libellant intolerable and his life burdensome.

On review of the whole record we are unable to draw so fine a distinction and feel that if such a flagrant and continued violation of marital duties were asserted and proven against the husband there would be no hesitancy in relieving an unoffending wife from further indignity and humiliation. We have here many acts of violence, personal assaults on the husband, threats to do him injury and attempts to take his life. The sex of the litigant has nothing to do with determining the rights of either party to the contract. The Act of June 25, 1895, P. L. 308, furnishes a cause for divorce "where the wife shall by cruel and barbarous treatment or indignities to his person,

render the condition of her husband intolerable or life burdensome." Each litigant is before the court only on the merit of the facts developed. Conditions of age, sex, social standing, church affiliation, have no place in construing the marital rights, duties and responsibilities of the parties in such a proceeding as we have before us.

Upon careful review of the whole record we feel that there is abundant testimony to establish the contention of the libellant, and there is no ground in reason or authority in relieving the wife from the effects of her own conduct.

The decree is reversed, all of the assignments are sustained, and the record is remitted to the court below with directions to enter a decree in accordance with the conclusions herein stated.