# CASES

IN THE

# SUPERIOR COURT

OF.

# PENNSYLVANIA.

---

## Hill, Appellant, *v.* Hill.

*Divorce—Libel—Cruelty—Indignities to the person—Evidence.*

1. On a libel by a husband against his wife for divorce alleging cruel and barbarous treatment and indignities to the person, where it appears that the parties had lived in another state, had there separated after a divorce a mensa et thoro, and thereafter became reconciled in Pennsylvania, evidence offered by the wife as to cruelty to herself and indignities to her person both in the other state and in Pennsylvania after the reconciliation, is admissible, where it appears that the libelant had testified as to the respondent's conduct in both states, and the evidence tends to show a connected course of conduct in both states inconsistent with the assertion of the complainant that his wife was the aggressor, and he the injured party.

2. In such a case where the burden of the libelant's charges were not physical injuries inflicted upon himself, but merely the respondent's extravagance and her statements against himself, he will not be granted a divorce where the evidence shows that he himself had inflicted upon his wife such injuries as would be ground for a divorce against himself for cruelty and indignities to the person.

Argued Nov. 18, 1913.  Appeal, No. 181, Oct. T., 1913, by plaintiff, from decree of C. P. Bradford Co., May T., 1912, No. 297, refusing divorce in case of George R. Hill v. Mabel Snow Hill.  Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter.  Affirmed.

Libel for divorce.   Before WHITEHEAD, P. J., specially presiding.

The court below found the facts to be as follows:

George R. Hill, the libelant, was married to Mabel Snow, the respondent, on September 21, 1891; that they continued to live and cohabit together as husband and wife for about nine years, when the respondent, who was then living at Sault Ste. Marie, Mich., filed her libel for divorce in the courts of Michigan, and secured what must have been a limited divorce, or a divorce from bed and board, with an order in the nature of alimony upon her husband, the libelant in this case, for the payment of $80.80 a month for a certain period of time.

A few months after securing this divorce the respondent in this case returned to Sayre, Pa., and lived with her father.   At this time five children had been born to these parties, three of whom were still living.

After living with her father a short time Mrs. Hill rented a house and went to housekeeping, teaching music to assist in paying the expenses.   This continued for probably six years when the parties became reconciled and by agreement commenced to live together as husband and wife.

After about a year's residence in Athens they moved to Towanda and lived in what was known as the Jarvis house and afterwards in a house purchased by Mr. Hill, the libelant.

These parties continued to live together in the house of the libelant until about November 30, 1911, when the respondent left the residence of the libelant, she claiming that because of his actions towards her she was forced to leave.

The married life of these parties has been marred from almost its beginning to the time of the last separation by very much unpleasantness, and from the testimony but one conclusion can be reached and that is, that the

only relief for this unusual and extraordinary unpleasantness is a divorce, and if the wife were the libelant it is possible a divorce would be granted, but we do not think that the libelant has made out such a case as would justify the granting of a divorce.

Much of the testimony is of such a nature that we do not care to rewrite it in this opinion, but from it we are convinced that the libelant did not come into court with clean hands; that in almost every instance when he alleges respondent did such cruel and barbarous acts as to make life unendurable he was at least equally as much to blame as his wife.

The testimony clearly shows that crimination and recrimination were indulged in and that incompatibility of temper exists to such a degree as to almost positively establish that in this case "marriage is a failure."

The chief and strongest reason which the libelant has undertaken to show why a divorce should be granted, is the accusations which it is claimed the respondent made about the libelant having been criminally intimate with other women.

From the testimony it may be possible that the respondent did at times make unwarranted assertions, but we are not convinced that they were made with the intention of burdening the life of her husband.

To constitute accusations such as have been shown in this case cruelty, they must have been made mala fide, and we are by no means convinced that the said charges or accusations were made with malice.

These accusations, if made, were not such as to render libelant's condition intolerable and life burdensome.

Since the reconciliation between these parties one child, Richard, has been born, and this child and the next older child, Marjory, are with the respondent.

Much of the trouble between these parties unquestionably resulted from charges of extravagance made by the libelant against the respondent, and it seems that

4        HILL, Appellant, *v.* HILL.

Opinion of Court below—Opinion of the Court.   [57 Pa. Superior Ct.

whenever financial matters were mentioned, war, in the shape of charges and counter charges, commenced.

If we refer to the testimony of what took place between these parties prior to their reconciliation, we are satisfied that counsel for libelant could not justify a finding in favor of the libelant.

Since the reconciliation there is no testimony showing such a course of action on the part of respondent that would warrant a finding that from these acts the life of libelant is intolerable and burdensome.

Admitting that indignities were imposed upon the libelant by the respondent, there is no evidence showing what effect such treatment had upon him.

His appearance and actions in his attendance upon this case as a witness for himself, would not indicate that his life was intolerable and burdensome, and there is not a scintilla of testimony showing that his life is or has been in danger.

It is true, that if the testimony would justify a finding that libelant's life was intolerable and burdensome because of the indignities imposed upon him by the respondent, it would not be necessary to show that his life was in danger, but the first of these elements must be established, otherwise the divorce should be refused.

*Error assigned* was the decree of the court.

*W. P. Wilson* and *J. R. Lilley*, for appellant.

*D. C. DeWitt*, with him *C. M. Culver*, for appellee.

OPINION BY HENDERSON, J., April 20, 1914:

The plaintiff set forth in his complaint two causes of action: cruelty, and indignities to the person. The conduct producing the results complained of is charged to have been statements in regard to the respondent made in his presence and to other persons relating to his physical condition; the respondent's state of health and

that of one of their children, because of that condition; her ill-tempered deportment; her extravagant habits and her conduct in bringing legal proceedings against him. The examination of the witnesses on the respective sides and the exhibits introduced fill two volumes containing more than 800 pages; there are thirty-three assignments of error relating to the merits of the case and to the action of the court in the admission or rejection of evidence. It is obvious that a discussion of the testimony in detail is impracticable nor is it to the interest of the litigants that it be repeated or made more conspicuous. It relates principally to the relations of the parties after there had been a separation for about seven years following a decree for a divorce a mensa et thoro obtained by the respondent in the state of Michigan, where the parties were then domiciled. The court is criticised for having admitted evidence for the respondent relating to the conduct of the complainant during their residence in Michigan, it appearing that there was a reconciliation shortly before the parties again took up their residence in Pennsylvania. This criticism will be seen to be not well founded when the evidence of the complainant is considered, for the case in chief covers conduct of the respondent in Michigan as well as in Pennsylvania and made relevant to some extent conversations and actions concerning the parties while they were out of this state. Moreover, the defense alleged cruelty and indignities to the person on the part of the complainant after the renewal of their marital relations in Tioga county, and the evidence of what occurred before the separation was admissible to throw light on the character of the complainant's conduct during the time when he alleges he was suffering from the cruelty and indignities of the respondent. The evidence was admissible in defense to show a connected course of conduct inconsistent with the assertion of the complainant that his wife was the aggressor and he the injured party. If he committed acts of indignity or

cruelty in Michigan and the same course of conduct was continued after the parties united again the evidence of the complainant's conduct in Michigan was relevant if it tended to show that his conduct in Pennsylvania was but a renewal of that which he had previously exhibited. The complainant admits that he sought a reconciliation in Pennsylvania where his wife was then living and acknowledged that he had been in the wrong. This acknowledgment he says had reference to his desertion of his wife at Sault Ste. Marie but that it did not admit acts of cruelty or indignity. The respondent alleges that it covered a course of conduct which had led to the partial divorce which she obtained in Michigan. The evidence offered by the complainant relates largely to conversations of his wife with different persons in which she charged him with having communicated an infectious disease to her and with having had sexual relations with other women and to the charge that she was extravagant in the management of the household and in the purchase and disposal of wearing apparel and articles of jewelry. The evidence as might be expected is quite contradictory, much of what is charged is explained by the respondent in a reasonable way and the principal allegations are specifically denied. Corroborations of the complainant are met by counter-corroborations of the respondent, and from the mass of evidence the learned trial judge reached the conclusion that the complainant was not free from blame and had not made out such a case as entitled him to a divorce. We are not convinced after a careful examination of all of the evidence and a consideration of the arguments presented to us that the court was in error in this respect. There is much evidence not successfully answered that the complainant struck the respondent at different times; that he gave way to a violent temper and exceeded the bounds of decorum in his treatment of his wife. The latter evidently exhibited spirit and resentment and the domestic situation was at times distressing, but we are

unable to conclude from the evidence that the respondent contributed more than her proportion to the unhappy situation. That she spent a larger sum of money than the complainant's financial situation justified is probably true, but the complainant was also extravagant and a considerable part of that which he attributes to his wife as extravagance was his own voluntary outlay. Horses, automobiles, a yacht and other luxuries owned by him indicate his habit of living. He was only bound to provide for his family an amount proportionate to his income; if she asked for more he was at liberty to decline to pay. He had legal control of his domestic establishment and could fix reasonable limits to the cost of its maintenance. The fact is not to be overlooked, however, that his social standing, his personal and family connections and the quality of his house involved a considerable expense. No allegation is made against the respondent that she inflicted physical injury on the complainant nor is any implication made against her personal character. Her talk and her extravagance furnish the foundation of the case against her. These are not sufficient in the face of the evidence, not inconsiderable in volume and specific details, showing that if she has subjected the complainant to mental distress and financial inconvenience she has had much to endure on her part which would be competent evidence in a proceeding by her for divorce for cruelty and indignities to the person. Without going into the case at length but in the light of all of the evidence we do not find sufficient warrant for a different judgment from that found by the court below. The numerous exceptions relating to the admission of testimony and the cross-examination of the respondent do not call for special discussion. We have considered them all carefully and are of the opinion that none of them can be sustained. They relate to features of the testimony which do not affect the main question and to the discretion of the court as to the limit of cross-examination. The thirty-

Opinion of the Court.        [57 Pa. Superior Ct.

second assignment relating to the refusal to admit certain letters in the handwriting of third persons was clearly correct. It was of no consequence that they had been shown to the respondent so far as the admissibility of the papers was concerned. Equally incompetent was the Clark letter referred to in the thirty-third assignment. Declarations of the writer were not available as evidence against the respondent.

The decree is affirmed.