## Cunningham, Appellant, *v.* Cunningham.

*Divorce—Cruel and barbarous treatment—Refusal of intercourse —Nagging—Constructive desertion.*

Where a husband and wife before marriage entered into a vow of purity, which they understood to be an agreement to abstain from sexual intercourse, and they live together for twelve years without having had intercourse although occupying the same room and the same bed, the husband will not be entitled to a divorce on the ground of cruel and barbarous treatment, because his wife resisted his sexual advances, and his allegation that she kept up a constant nagging such as fault-finding and scolding, but never in the presence of third parties, will not bring the case within the statute.

Argued December 3, 1914.   Appeal, No. 2, Oct. T., 1914, by libellant, from decree of C. P. No. 3, Philadelphia Co., Sept. T., 1910, No. 129, refusing divorce in case of Clement Remington H. Cunningham v. Irene D. Cunningham.   Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Affirmed.

Libel for divorce.

Exceptions to report of Thomas A. Fahy, Esq., recommending decree for libellant.

The court filed the following opinions:

McMICHAEL, P. J., December 11, 1913:

In this case the master appointed by the court filed his report, in which he found in favor of the libellant and recommended that a divorce should be granted on the ground of cruel and barbarous treatment.   The mas-

ter declined to recommend a divorce on the ground of desertion.    Exceptions were filed by both libellant and respondent to the master's report.    The exceptions on behalf of the libellant are as follows:

"1. The learned master erred in finding that the cruelties and indignities suffered by the libellant consisted chiefly in the fact that respondent denied libellant the privilege, which as a married man, he had a right to expect.

"2. The learned master erred in finding that the charge that the respondent deserted libellant on December 4, 1895, was not sustained.

"3. The learned master erred in finding in effect that libellant's understanding of the oath or vow which the parties took before marriage was that they should refrain from sexual intercourse after marriage."

The respondent's exceptions to the master's report are as follows:

"1. The learned master erred in finding as a fact that the respondent constantly nagged the libellant during their married life.

"2. The learned master erred in finding as a fact that the conduct of the respondent reduced the libellant to such a condition that had he continued to live with her that his life would have been in danger.

"3. The learned master erred in finding that the respondent has been guilty of such cruel and barbarous treatment as to endanger the libellant's health, and to make his condition intolerable as will justify a court entering a decree of divorce from the bonds of matrimony.

"4. The learned master erred in recommending that a decree of divorce from the bonds of matrimony be entered.

"5. The learned master erred in finding that the respondent has received far more from her husband than he was under any circumstances obliged to give her;

that she still has it, and receives an ample income from it.

"6. The learned master erred in recommending that no permanent alimony be decreed to respondent, in the event that a divorce v. m. be decreed.

"7. The learned master erred in not recommending that the libel be dismissed."

The case came before the court and the report of the master was approved, but afterwards, upon petition, was reargued before the court in banc.

We are of opinion that the respondent's exceptions two, three, four and seven should be sustained, and that the libellant's exceptions should be dismissed.

We are of opinion that the testimony does not justify the master in the findings which are covered by these exceptions, and we, therefore, as a court, decline to adopt these findings of the master as the findings of the court, but do find as a fact that the charges of cruel and barbarous treatment and of indignities are not sustained by the evidence, and that the libel should be dismissed.

The main stress of the libellant's contention and of his own testimony to support his contention, is that his wife refused sexual intercourse. It has been decided by the courts of Pennsylvania that the refusal of sexual intercourse is not a ground of divorce in Pennsylvania. In Eshbach v. Eshbach, 23 Pa. 343, it was held that the denial of sexual intercourse was not a ground for divorce, and in Fritz v. Fritz, 14 L. R. A. 685, that it was not desertion. In Klopfer's App., 1 Monaghan 81, where a husband filed a libel for a divorce from his wife on the ground of desertion, and she undertook to justify the desertion on the plea that he had denied her sexual intercourse, and it was admitted that there never had been any sexual intercourse between them, the lower court held that the wife had deserted her husband without just cause and entered a decree of absolute divorce. The wife appealed the case to the Supreme Court, and the decree was affirmed in a per curiam opinion, wherein the

court said: "Our law in regard to divorce is loose enough already, and we are not disposed to relax it further by judicial construction." The opinion of the Supreme Court in Eshbach v. Eshbach, supra, was delivered by WOODWARD, J., and this language is used in the course of the opinion "Nor is the fact that the husband lay in a separate bed an act of cruelty as was ruled in Aquilar v. Aquilar, 1 Haggard 776."

In Klopfer's Appeal, reported in 1 Monaghan, page 81, which was an appeal from Common Pleas, No. 1, of Allegheny County, one of the acts alleged to be cruelty was that the husband refused to have sexual intercourse with the wife. SLAGLE, J., in delivering the opinion of the court below, said: "The only other ground of complaint is that the libellant refused to have sexual intercourse with his wife. This is a fact necessarily dependent upon the testimony of the parties, or their admissions. She alleges that her husband never attempted to have connection with her but once, and then did not succeed; he says that he made many attempts; both admit that no such intercourse was had. The testimony on this point leaves a grave suspicion that the whole difficulty has not been disclosed. Their conduct is certainly very singular, but it is not necessary to go into details. Impotency is not alleged, and certainly not proved; and the case of Eshbach v. Eshbach rules that a refusal to have such connection is not cruel treatment." An appeal was taken to the Supreme Court, and in a per curiam opinion, delivered January 7, 1889, the lower court was affirmed.

Even if we were satisfied to adopt the findings of the master, that there had been a refusal of sexual intercourse, we think that we would be bound by the decision of the Supreme Court in the last cited case, but the evidence is, in our opinion, insufficient to warrant a finding by the court that there was a demand for and refusal of sexual intercourse. It appears from the testimony that the libellant and respondent prior to their

marriage made a compact or agreement that they would live pure lives, and that this was sanctioned in a most solemn way, and that for twelve years or more they slept in the same bed and never had sexual intercourse one with the other. The testimony of the libellant himself is to the effect that he never asked his wife for conjugal rights. He says that he made approaches to her and was repulsed, but we are of opinion that, considering the compact they made and that they lived for many years together and slept in the same bed without sexual intercourse, it was incumbent upon him to say to her that, notwithstanding their early vow or compact, he should hereafter insist on his conjugal rights. It is true that just before he left her he did say, "If you are not human I am," or words to that effect, but in order to enable him to dissolve the contract of marriage which they had made, it was his duty to explain to her that he was no longer willing to live with her unless she granted him the rights of a husband. However strange, abnormal and against nature was their compact and their subsequent mode of life, it does not seem to have affected his health for ten or twelve years, and although he does assert that after that time his health began to break down, the testimony is that up to a comparatively short time before he left her he was in good health.

It is difficult to decide this case merely on general principles. The testimony must be studied, and although we have great respect for the master and for his learning and are sure that his findings are conscientious, yet we think his finding that there was cruelty was against the law of Pennsylvania as interpreted by the higher courts and against the evidence.

The master has found that the libellant is justified in having a divorce from the respondent because she nagged him, but there is not a word of testimony to show that she ever reproached him or reviled him in public, nor does the testimony of the libellant himself go so far as to assert that she used vituperative or un-

kind words towards him. The complaints she made may and very likely did proceed from a nervous woman. To nag means to "scold or annoy habitually," but we have not been shown any case in Pennsylvania where a divorce has been granted for such a cause. The master, it is true, had a better opportunity to judge of the parties than we have, but the conflict between the witnesses is not very great. It is in the inferences to be drawn from the testimony rather than in deciding between witnesses as to who is to be believed and who is not to be believed that we think the learned master erred.

As the Supreme Court said in Klopfer's Appeal, supra, our law in regard to divorce is loose enough already, and we are not disposed to relax it further by judicial construction. The testimony as to refusal is vague and indefinite. And the fact of the compact, and of their life together for twelve years without sexual intercourse, has forced the conclusion on the court that their method of life was by mutual consent, and not on account of the refusal or denial by the woman of conjugal rights.

There is another consideration. It appears from the evidence that the libellant from the time of the marriage until he left the respondent lived with her in the house of the respondent's father, who was a man then well to do, and that the libellant's sole contribution to the expenses of the household was $3.50 a week. During all this time the libellant was able to save money, and, being an industrious and intelligent man, he was advanced in his business and gradually acquired that which should be enough to support himself and his wife. So that if the marriage contract be annulled (as the master has recommended that no alimony be allowed), the respondent will be entirely dependent upon herself or upon the charity of others for her support. She may even become a burden on the public. Her father, who was a generous and prosperous man and who aided the libellant, may have become bankrupt, and the libel-

lant, who has become prosperous, should not be permitted to throw off the responsibilities which he undertook when he married the respondent. It is true that the Superior Court, in a proceeding under the Act of 1905 refused the respondent support and relegated the parties to the divorce proceedings. That case was a different one. The issue having been different we do not regard that decision as an adjudication of the issues involved in the present case.

There are well reasoned cases in other states which have held that the refusal of sexual intercourse is a ground for divorce. Thus it has been held in New Jersey that a refusal of sexual intercourse is constructive desertion. But the courts of Pennsylvania have taken a different view. They have held that refusal of sexual intercourse is neither an act of cruelty nor an act of desertion, and we think we are bound by those decisions. The legislature of Pennsylvania has, by numerous enactments, enlarged the jurisdiction of the divorce courts of Pennsylvania, but the fundamental causes of divorce, cruel and barbarous treatment, indignities to the person, desertion and adultery, are still the only grounds for divorce in this State, and we do not think that the libellant has shown by testimony that his case falls within any of these grounds.

Exceptions 5 and 6, which refer to alimony, become unimportant if a divorce is finally refused. We, therefore do not pass upon them.

The libel is dismissed and the divorce refused.

FERGUSON, J., December 11, 1913:

I concur in the views expressed in the opinion of the president judge and, at his suggestion, add the following views by which I independently arrived at the same conclusions:

The learned master in this case in his report states what he conceives to be the real issue in these words: "The real issue, therefore, is, Does a refusal to submit

to sexual intercourse which results in the health of the injured party becoming impaired, constitute cruel and barbarous treatment?"  The master finds as a fact that prior to their marriage the parties entered into a vow of purity, which both understood to be an agreement to abstain from sexual intercourse with each other. For a period of twelve years the parties adhered to this agreement while occupying the same room and the same bed.  During this time sexual approaches were made by the libellant, which were repulsed by the respondent, and the master finds that during all these years the antenuptial agreement was adhered to willingly by the wife and most unwillingly by the husband.  The master is impressed by the fact that medical witnesses are of opinion that such a course of conduct might develop neurasthenia, and he argues that such an unnatural way of living, coupled with "constant nagging" on the part of the wife, might seriously impair the health of the libellant.  He makes no specific findings as to what the "constant nagging" consisted of, but the evidence shows that, at the worst, this nagging consisted of fault finding and scolding.  Both parties agree in their evidence, however, that nothing ever occurred in the presence of third parties to indicate anything other than a happy and harmonious marital relationship.

The master, therefore, well aware of the decisions which he quotes, that a denial of sexual intercourse in itself does not amount to legal cruelty, but apparently impressed by other decisions to the effect that any course of conduct which endangers life or health constitutes legal cruelty, concludes that the respondent has been guilty of such cruel and barbarous treatment as to endanger the libellant's health, and recommends that a decree of divorce be entered.

I cannot concur in the conclusion which the master has reached.  The ground for divorce is cruelty, and, unquestionably, in the mind of the master and of the libellant, the cruelty consisted chiefly in the denial by

the wife of the natural and proper demands which her husband made upon her. It is true they were not made by word of mouth. The master has found, and the evidence warrants the conclusions, that these demands were made by actions, but their intent was sufficiently clear to the respondent. These demands were refused by her. That is unquestionably the real basis for this suit. The libellant, however, was not obliged to continue in such unnatural relationship. No one would have been surprised if, after a series of approaches within a reasonably brief space of time, he had been dissatisfied with the relationship existing between himself and his wife and had ended it. The extraordinary fact that he persisted in close and intimate relations with his wife for a period of twelve years, during which time these approaches and repulses continued, shows clearly that he acquiesced in his wife's behavior as a compliance with the agreement they had made. How, therefore, can it be believed otherwise, than that the libellant, except for the exhibition of occasional and temporary desire to break their agreement, was entirely satisfied that it should stand? He never proposed that the agreement be broken. If after many years he finds his health is affected must it not be regarded as a fact that his own adherence to the compact was as much the cause of that condition of health as the conduct of his wife?

I am not convinced, however, that this conduct affected the libellant's health, in fact, he is not convinced of it himself, because he so states in his evidence, and it appears that this condition of health did not develop until a few months prior to the time when the parties actually separated. If a life of continence under such conditions was likely to affect the health of the man, it surely would have developed long before the time indicated by the evidence, and while I can readily believe the opinions of medical experts, to the effect that such a re-

lationship might have that result, I am not convinced that it did in this case.

The case cannot be bolstered up by evidence of so-called "nagging" on the part of the wife. As above suggested, this "nagging" never took place in the presence of other persons. It is quite clear that the wife was of a querulous, fault-finding and exacting disposition, but all scoldings, discussions, quarrels and other unpleasant conversations took place only in their private apartments. These matters in themselves would not constitute a basis for an action in divorce: Schulze v. Schulze, 33 Superior Court 325. They do not amount to legal cruelty. It is clear from our decisions that a denial of sexual intercourse in itself is not cruel and barbarous treatment. Neither is bad temper and fault-finding. How can it be said that, putting them together, they may jointly become the basis for an action of divorce, if ill health develops, especially when the libellant never told his wife that anything that she had done or refused to do had any relation to the condition of his health down to the actual moment of parting? He then indicated that the reason for his separation from her, and presumably the explanation of his bad health, was the fact that she refused to accord to him the marital rights of a husband. It was to be expected that such a relationship would in time affect the nerves and the health of both of them. It is surprising that for so long a period of time neither of them was affected. It is reasonable to suppose that much of the bad temper and fault-finding on the part of the wife was due to their un-natural relations, whether she so understood it or not, but I fail to see how her adherence to their original agreement acquiesced in though unwillingly by the husband, can at this late day justify the court in holding that she was guilty of cruel and barbarous treatment, even though she was also guilty of fault-finding and nagging. The parties both persisted in an unnatural relation. Doubtless they were both affected by it.

Neither one can with justice place the blame for the results on the other. They were both at fault in respect to the essential cause of the condition of the health of both of them. For these reasons I am obliged to conclude that the master was in error in his conclusion that the wife was guilty of cruel and barbarous treatment.

The master has declined to find the respondent guilty of desertion, and to this finding the libellant has filed exceptions. In this I think the master was justified by the evidence. It was the libellant who absented himself from the habitation of the respondent. So far, therefore, as the actual withdrawal from the habitation is concerned, the libellant is the guilty party. It is true the wife declares that while she is willing to return to her husband or have him return to her, she is unwilling to break the ante-nuptial oath, as she describes it. In other jurisdictions this might be construed to be a technical desertion, but there is no warrant for it in the decisions of Pennsylvania.

In view of our disagreement with the master upon his conclusion that the libellant is entitled to a decree of divorce, it is unnecessary for us to dispose of the question of permanent alimony.

*Error assigned* was decree dismissing the libel.

*John G. Johnson,* with him *Francis S. McIlhenny,* for appellant.—The law of Pennsylvania has been crystallized into the principle that any course of unjustifiable treatment which impairs the health is cruel and barbarous treatment: Russell v. Russell, 37 Pa. Superior Ct. 348; Barnsdall v. Barnsdall, 171 Pa. 625; Fay v. Fay, 27 Pa. Superior Ct. 328; Hartman, 21 Dist. Rep. 341.

Nothing injurious to the health can be required of either party in marriage. But if from no consideration of health, and from no other good reason, either the husband or the wife permanently, totally and irrevocably

puts an end to what is lawful in marriage and unlawful in every other relation,......to what distinguishes marriage from every other relation,......this by the better opinion constitutes matrimonial desertion,......: Raymond v. Raymond, 79 Atl. Rep. 430; Yawger v. Yawger, 86 Atl. 419; Rector v. Rector, 78 N. J. Eq. 396.

Refusal to permit intercourse has been held to be desertion in numerous other jurisdictions of which the following cases may be cited as examples: Whitfield v. Whitfield, 89 Ga. 471; Evans v. Evans, 93 Ky. 510; Graves v. Graves, 88 Miss. 677; Sisemore v. Sisemore, 17 Ore. 542; Stein v. Stein, 5 Col. 55; Hayes v. Hayes, 144 Cal. 625; Fitts v. Fitts, 46 N. H. 184.

The English practice in such cases appears to be to draw an inference of importance even without medical testimony and to enter a decree for nullity of marriage: S. v. S., 24 Times Law Reports 253; F. v. P., 75 Law Times Reports 192; G. v. G., 2 Probate & Divorce Reports 287.

*James Gay Gordon*, with him *Wm. Taylor, D. P. Hibberd* and *Samuel P. Tull*, for appellee.—Long lapse of time between the occurrence of a matrimonial offense and an application for a divorce will bar the suit, unless a satisfactory excuse is shown for the delay; the same rule being applied as in equity cases in general: Berger v. Berger, 23 Pa. C. C. R. 232; G. v. H., 10 App. Cas. 171.

The refusal to permit sexual intercourse is not a ground for divorce either upon the allegation of cruel and barbarous treatment or of desertion: Thompson v. Thompson, 50 Pa. Superior Ct. 159; Anonymous Case, 52 N. J. Eq.; Southwick v. Southwick, 97 Mass. 327; Wacker v. Wacker, 55 Pa. Superior Ct. 380; Buys v. Buys, 56 Pa. Superior Ct. 338.

The nagging was no ground for divorce: Schulze v. Schulze, 33 Pa. Superior Ct. 352; Russell v. Russell, 37

Pa. Superior Ct. 348; Barnsdall v. Barnsdall, 171 Pa. 625; Biddle v. Biddle, 50 Pa. Superior Ct. 30.

OPINION. BY HEAD, J., October 11, 1915:

We may agree with the able counsel for appellant that "this is a most remarkable and unusual case." Strange as the facts may be, the legal questions arising from them which must control the determination of the appeal before us, are neither numerous nor complicated. Both are sufficiently stated in the opinions filed in the court below which will be printed in the report of the case.

The libellant seeks to be relieved from the obligations of what is considered, by all Christian nations, to be at least the most important civil contract into which two human beings can enter, to wit, the contract of marriage. His right to such relief is neither a natural nor an absolute one. If it exists, it is because the sovereign legislative power has chosen to confer it, in relief of recognized evils incident to a further continuance of the marital obligation, which would be more harmful to the State than the severance of that relation. To entitle him to a decree, therefore, he must have established the existence of some cause recognized by the legislature as a sufficient support for the judgment he seeks. The original libel rested the case of the libellant on the allegation that the respondent "by cruel and barbarous treatment and indignities to his person hath rendered the condition of this libellant intolerable and his life burdensome and his health has been thereby seriously impaired." Later on he sought to amend his original bill and was permitted to amend it by alleging the respondent had been guilty of willful and malicious desertion. Although the libellant and respondent had lived together in the marital relation for upwards of twelve years, and during that period had occupied the same room and bed, in his amended complaint he lays the time of the desertion as of the date of his marriage.

It is apparent, therefore, that the desertion of which he complains is not the ordinary case of desertion, understood in the speech of the people, when that term is used.   It is a species of fictitious or constructive desertion resulting, as he believes, from the unusual relation that existed between himself and his wife during the many years that elapsed between their marriage and their actual separation.   His right to a decree of divorce depends on two questions, viz: Has he shown by the evidence in the record that his wife had willfully and maliciously deserted him for the statutory period before the filing of his libel?   Has he established that she had subjected him to a course of cruel and barbarous treatment, within the meaning of the statute, or such indignities to his person as to render his condition intolerable and his life burdensome?

The learned court below, after a full examination of the evidence and a careful consideration of the legal propositions arising therefrom, answered both of these questions in the negative and refused the decree prayed for.   We are obliged by the statute, conferring and defining our jurisdiction, to examine for ourselves the testimony in cases of this character and to determine therefrom, independent of the findings of any examiner or even of the court below, whether or not in truth and in fact a legal cause of divorce has been made out.

Leaving aside for the moment any consideration of the central fact out of which this controversy evidently arises, let us briefly dispose of the contention between the parties as to whether or not a cause of divorce exists because of what is called "nagging" by the wife; differences of opinion as to many more or less everyday questions.   We agree with the learned court below that as to this branch of the case no cause of divorce has been shown.   In stating the law on this question we can do no better than repeat what we said in Ingram v. Ingram, 58 Pa. Superior Ct. 522, a case that, in this respect alone, presented much more aggravating fea-

tures than the case at bar, viz: "Her testimony does tend to establish that he frequently refused to talk with her; that on one occasion some years ago he pointed a revolver at her, although he uttered no threat he would use it; that he would remain away from home until late at night, and sometimes all of the night, leaving her a prey to anxiety for his safety and apprehension for her own. These and other like facts testified to indicate a course of conduct which, if established, would necessarily be productive of much unhappiness. But if it be "such cruel and barbarous treatment" endangering the wife's life as is contemplated by the statute, then, indeed is our language too poor to furnish adequate terms to apply to the conduct usually depicted in the cases where divorces have been granted on the grounds we have been considering. So, too, there may be and are many and serious injuries to that inner and finer life which is of the spirit, that are not the 'indignities to the person' with which the statute deals. The legislature has not yet seen fit to recognize as grounds of divorce that temperaments are incompatible, that ideals have been lowered, that indifference has usurped the seat of affection, and unhappiness driven away peace and contentment."

The peculiar view which this respondent now entertains, of her duties and obligations in the marriage state, had its origin in her conception of that relation before she entered into it. Whatever may now be the understanding of her husband as to the letters he wrote and the way he conducted himself at that time, no fair-minded reader of the evidence can doubt what was the understanding of the respondent. She had every reason to believe that her conception of what she viewed, as the better idea of the way in which two married people should live, was fully shared by her proposed husband, and that he not only accepted it but desired to live in accordance with it, and to that end requested her aid even if times should come when for the moment he might

622, (1915).]      Opinion of the Court.

be unable to wholly live up to it.   The evidence tends to show that during many years, in all material ways, he lived and prospered by holding to the compact on which they had mutually built their hopes of future happiness. If it be true that these conceptions of life and its obligations, strained and abnormal as they may appear, have now entered so deeply into the make-up of this woman as to dominate her attitude towards her husband, it cannot be said that he is without responsibility for their existence.

The opinions filed by the court below, as we think after much reflection, exhibit convincing reasons for the conclusion that, as the record is now before us, this libellant has failed to show either a case of willful and malicious desertion without cause, or of cruel and barbarous treatment and indignities to his person within the contemplation of the statute.   The assignments of error are overruled.

Decree affirmed.