## Whiffen v. Whiffen, Appellant.

*Divorce—Indignities to person—Cruel and barbarous treatment—Evidence.*

A libel, filed by a husband for a divorce on the ground of indignities to the person and cruel and barbarous treatment, will be dismissed, where the evidence shows that the facts on which the libellant relied were so negative in character and so unimportant in effect, as to justify the conclusion that the allegations in the libel were not sustained, and that the libellant's alleged wrongs were not such as to warrant the granting of the divorce.

Argued May 8, 1919. Appeal, No. 30, April T., 1919, by respondent, from decree of C. P. Allegheny Co., April T., 1917, No. 2358, granting a divorce in case of John W. Whiffen v. Mary M. Whiffen. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Libel in divorce. Before CARNAHAN, J.

The case was referred to F. J. Tyrell, Esq., as master, who recommended a divorce.

Exceptions were filed to the master's report, which were overruled by the court and a decree of divorce granted. Respondent appealed.

The opinion of the Superior Court states the case.

*Error assigned* was decree granting the divorce.

*Ralph J. Brown,* for appellant.

*George C. Calder,* for appellee.

OPINION BY WILLIAMS, J., July 17, 1919:

This is an appeal from a decree granting a divorce a. v. m. to a husband on the ground of cruel and barbarous treatment.

The master's findings indicate that he believed the testimony on behalf of libellant and disbelieved that of the respondent. In examining the record we are obliged to differ with the master in a number of material matters of fact.

The testimony shows that libellant was partly responsible for the domestic difficulties. He was getting stout; she mentioned it and he became very resentful; she became pregnant; he was very much hurt when she accused him of being the cause of her condition; she did not like some of his friends and told him so; she did not like Duquesne, with its smoke and dirt, and said so; when the time of her confinement approached she went, with his consent, to stay at the home of her foster parents in Rochester, New York; he went there to see her and, during the course of some remarks about his mother, became highly incensed because, in the heat of the argument, she told him to go home; his father took the baby out and let the sun shine in its eyes; libellant could not understand why his wife should object; she did not like the summer heat of the Pittsburgh district, and went to spend the summer with her parents in Rochester in the summer of 1916; these were the two occasions when she is found to have wilfully left her husband; he brought company home to a meal without warning to his wife and was surprised that she objected to the sudden visitation; he felt much abused that he should be compelled to perform such menial duties as scrub, wash dishes, and dust rugs, when his wife was unable to attend to these duties when suffering from the discomforts of pregnancy,

and subsequently hampered with the care of an infant; he became ill and she attended him as well as she could; he considered it neglect for her not to furnish him with clean flannel for his chest, even though she did not know he needed it; he came home one evening in March, 1917, and said "Is this all I am to have for my supper" to the wife who had prepared a meal consisting of meat, tomatoes, potatoes, bread, butter and coffee; an argument ensued and libellant left the house in high temper; upon his return, his wife was afraid of him and locked him out of her bedroom, where the baby was resting, as well as it could, in a teething fever; he later took the locks off the doors and she told him he might lose his job at the works if the men heard of such queer doings; she told him he acted like a crazy man at such times; when her child was born, she was curious as to the inheritance laws of Pennsylvania; she got law books from the library and read up on the question; he accused her of reading up the divorce law; he said she asked for money when she had plenty of bills in her pocketbook, and it appeared that she had no change and wanted a quarter to tip the porter on the train; after he left her she summoned him into court for desertion and nonsupport when she could not live on what he was paying to her; he says she called him a vile name; she denies it and we believe her; he testified these troubles affected his health and wore him down, yet he grew fat after his marriage; he gave her $50 per month for house supplies in 1914; he complained because the food was not better and more plentiful in 1917, and, not long before he left her, cut this allowance to $15 every two weeks; he furnished help only intermittently, and complained because the house was, on occasion, dirty, notwithstanding the fact that a steel mill was located only a block away; he sought to have intercourse with her when she was menstruating, as is evidenced by his own testimony, and was highly incensed because she fought to prevent the act; he did not even know what the monthly change of the female sex was, and presumed she

wore sanitary bandages to keep him from intercourse; these and many other trival things are sought to be distorted into the cruel and barbarous treatment such as will justify a decree in divorce.

It would serve no useful purpose to review or consider the cases involving cruel and barbarous treatment at the complaint of the husband. Where the decree was granted, something more than the negative acts testified to in the present case existed such as threats against the husband's life, continual nagging in public, imputing incompetence in business, unchastity charged, actual physical violence, not necessarily endangering the husband's life, the prosecution of the husband in numerous legal actions, a self-induced condition of mind, the result of the use of drugs, causing such acts to be done, which condition continues for long periods with no signs of improvement, or some positive and continued course of action in pursuance of a malicious intent to his harm: Fay v. Id., 27 Pa. Superior Ct. 328; Shaw v. Id., 36 Pa. Superior Ct. 122; Egolf v. Id., 53 Pa. Superior Ct. 254; Mamaux v. Id., 64 Pa. Superior Ct. 131; Ponthus v. Id., 66 Pa. Superior Ct. 257.

An examination of the following cases will show that the decree, granted in this case, cannot be sustained: Johnson v. Id., 31 Pa. Superior Ct. 53; Schulze v. Id., 33 Pa. Superior Ct. 325; Platt v. Id., 38 Pa. Superior Ct. 551; Hexamer v. Id., 42 Pa. Superior Ct. 226; Biddle v. Id., 50 Pa. Superior Ct. 30; Hill v. Id., 57 Pa. Superior Ct. 1; Aikens v. Id., 57 Pa. Superior Ct. 424; Cunningham v. Id., 60 Pa. Superior Ct. 622; Lewis v. Id., 63 Pa. Superior Ct. 82. We are of the opinion, after a careful reading of the entire record of upwards of four hundred pages, that libellant has failed to establish the necessary facts to warrant a decree in his favor.

The decree of the court below is reversed, the libel dismissed, and it is ordered that libellant pay the costs in this court and in the court below.