## Lee v. Lee

*Prall B. Roads,* for libellant.

HICKS, J., November 30, 1931.—A subpœna in divorce was awarded in this case on February 23, 1931, and on April 3, 1931, was served personally upon the

respondent in the Borough of Manhattan, County and State of New York. It needs no citation of authorities to confirm the statement that such service was wholly invalid. Notwithstanding this illegal service, a master was appointed on June 22, 1931.

On July 30, 1931, two days before the hearing before the master, the libellant's attorney, as we are informed by the prothonotary, filed a typewritten præcipe for appearance of the respondent, signed "Helen F. Lee." Of course, a general appearance in an action for divorce cures all defects of service or notice up to the time of appearance or demurrer: Eberle v. Eberle, 13 Schuyl. L. Rec. 175; but in divorce proceedings it is subject to qualification because of the well recognized principle, often expressed in the words, "the Commonwealth is always the unnamed third party to the proceedings." Divorces are granted on public grounds and not to suit the mere desires of the parties. Hence, suspicious circumstances tending to show collusion will be closely scrutinized by the courts. "An acceptance of service after it is too late to make a valid service or an appearance notwithstanding a fatal defect in the service of the writ, or in the publication, it may be conceded, is a circumstance suggestive of collusion, which may be taken into consideration in connection with other circumstances in determining that question of fact:" English v. English, 19 Pa. Superior Ct. 586, 598, 599.

A proceeding in divorce must be essentially adverse, and the law seeks, first of all, to get personal notice of it to the respondent. It is only when personal service is shown to be impractical, by two returns of fruitless search, that the law allows a resort to publication. A readiness on the part of the respondent, who does not propose to resist the application, to assist the libellant by waiving the requirements of the law, is inconsistent with the idea of the proceeding being adverse. It may not be sufficient of itself to establish collusion between the parties. However, in this case, when considered in the light of what will follow, it is strongly suggestive of it. It shows a disposition to encourage and aid the proceeding, which practically results in the same conditions we have where the proceeding is instituted by active collusion. In this case, service was made by one who pretends to be a special deputy sheriff of New York County and who swears to the service before a notary public in that county; he was not deputized by the Sheriff of Schuylkill County, although such deputization would have been invalid, but no doubt process reached his hands through some other channel; a formal typewritten præcipe for appearance was filed by the libellant's attorney, signed by the respondent. We do not know whether she wrote her name on this præcipe or that she is the respondent named in this case. No one vouches for her identity, and there is no proof of her handwriting. These circumstances alone raise suspicion of collusion.

Section sixteen of The Divorce Law of 1929 provides that no spouse shall be entitled to commence proceedings for divorce who shall not have been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing of the libel. Of course, the libellant is a competent witness to prove his residence. According to the libel and the testimony in this case, the parties were married in the City of New York on June 4, 1920, of which city the respondent was a resident. After their marriage they lived in New Haven, Conn., for a period of ten months. They then moved to Pottsville, where they lived until June, 1922, or a further period of nine months, when they moved to Pasadena, Cal., where they continuously lived until June, 1930, or a period of over eight years. The libellant returned to Pottsville in June, 1930, and filed his libel on February 23, 1931, or a period of eight months after his return. The only witness in the case was the libellant. No answer was filed by the respondent, and

she did not appear at the hearing. A leading question was addressed to the libellant: "Q. Now, when you say you lived in New Haven, Connecticut, for a time after you were married and Pottsville and Pasadena, you mean that you visited there and always maintained your residence in the City of Pottsville? A. Yes. Q. Always voted and had an established legal residence in Pottsville? A. Yes. Q. And you paid your taxes here? A. Yes." This is insufficient to establish a bona fide residence in the City of Pottsville. Outside of the suggestion in the leading question that he simply visited in Pasadena for almost eight and one-half years and in New Haven, Conn., for a period of ten months, there is no testimony as to the extensiveness of these visits or such evidence as might show that he always maintained his residence in the City of Pottsville. It is strange that out of his ten years of married life all but nine months were continuously spent in visiting in the State of Connecticut and the State of California. Of course, he says he always voted in Pottsville. Did he return at election time to vote and at what elections did he vote? He says he paid his taxes here. Where is the corroborating evidence? We are unwilling to come to the conclusion from his unsupported testimony that he was a bona fide resident of the City of Pottsville from the time of his marriage. If he did gain a residence here in June, 1930, he was not a resident of this Commonwealth for at least one year prior to the time of filing his libel. Hence, this is another ground of lack of jurisdiction of this court.

Even upon the merits of the case, the ground of divorce being indignities to his person, rendering his condition intolerable and life burdensome, we do not feel that he has made out a cause of divorce. His complaints against his wife are those of extravagance, refusal of conjugal intercourse for a period of six months previous to their consentable separation, complaints about her desire for entertainment about two or three times a week, and one occasion when she was partially intoxicated. He is not corroborated in any particular. "It is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts ... that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient:" Breene v. Breene, 76 Pa. Superior Ct. 568. Trivialities, Miller v. Miller, 36 Montg. Co. L. Repr. 357, Eastland v. Eastland, 70 Pitts. L. J. 221; domestic infelicity, Hahn v. Bealor, Exec'r, 132 Pa. 242, Gordon v. Gordon, 48 Pa. 226, Hexamer v. Hexamer, 42 Pa. Superior Ct. 226; extravagance of wife, Hill v. Hill, 57 Pa. Superior Ct. 1; refusal of conjugal intercourse, Johnson v. Johnson, 31 Pa. Superior Ct. 53, are not sufficient upon which to ground a divorce for indignities. Mere general assertions as to the conduct of the respondent and treatment of her husband, unaccompanied by evidence of actual facts, are insufficient: Parton v. Parton, 67 Pa. Superior Ct. 353; Ford v. Ford, 67 Pa. Superior Ct. 350. The libellant must show by a fair preponderance of credible testimony the truth of his allegations and the facts are so negative in character and so unimportant in effect that the conclusion is justified that the allegations are not sustained and a divorce on the ground of indignities should be refused: Whiffen v. Whiffen, 72 Pa. Superior Ct. 593.

From a careful scrutiny of this record, beginning with the invalid service of the subpoena, the suspicious circumstances of what pretends to be an appearance by the respondent, the failure to establish a bona fide residence within this Commonwealth for a period of one year previous to the filing of the libel, and the failure of the sole testimony in this case of the libellant to convince us that

the ground of divorce was such indignities to his person as to render his condition intolerable and life burdensome, we easily reach the conclusion that this divorce should be refused. The master recommends a divorce; we cannot follow him.

The libel is dismissed and the divorce is refused, without prejudice.

From M. M. Burke, Shenandoah, Pa.