## Higgins v. Higgins

*Joseph T. Scarry*, for libellant.

LAUB, J., July 5, 1946.—The master in this divorce action has recommended a decree on the ground that respondent is guilty of a "constructive desertion".

The facts are meager. Respondent, during libellant's absence from the common home on business, permitted an habitual inebriate to frequent the premises. When libellant returned and called upon respondent for an explanation she replied that the inebriate was an unfortunate individual who had dropped in for an occasional chat now and then and that she didn't mind his coming to the home. Libellant, as he stated, "passed it off". Later, when he returned from a six weeks' period in a hospital, he found that respondent had taken the said inebriate into the home as a boarder. Libellant protested and insisted that the stranger be put out since he was very pugnacious while under the influence of alcohol. Respondent refused to eject the intruder and libellant stayed on at the home for a few weeks during which he begged and pleaded with his wife to get rid of him. Respondent told him that as long as she had a roof over her head the roomer could stay and he could leave. Libellant testified at the hearing that there was then "nothing else to do and so I packed my grip and walked out and haven't been back since".

The persistence of the legal fraternity in indulging the loose term "constructive desertion" has turned

many a legal mind to the problem of whether or not there is such a type of desertion known to our law. The well-considered and exhaustive opinions of President Judge Rice in Carl v. Carl, 48 D. & C. 459, and of President Judge Sheely in Pierce v. Pierce, 36 D. & C. 420, are representative of one trend of thought on the matter. These cases hold that there is no such thing as constructive desertion in Pennsylvania. Atypical of these decisions is that of Lynch v. Lynch, 3 D. & C. 810, and Masden v. Masden, 13 D. & C. 195, which tacitly admit its existence. Freedman (Law of Marriage and Divorce, sec. 243) devotes an entire section to a discussion on the subject with the observation that:

"The subject of constructive desertion has suffered from the want of thorough exposition in Pennsylvania. The obscurity in the law is deepened by the scarcity of appellate authority and the apparently contradictory views of the courts."

We doubt that the situation is as confused as would be made to appear. It is true that President Judge Orlady in Hartner v. Hartner, 75 Pa. Superior Ct. 342, 344, stated that constructive desertion was "a term unknown to our law", and that Judge Head in Cunningham v. Cunningham, 60 Pa. Superior Ct. 622, in refusing a divorce, termed the allegations of the libellant "a species of fictitious or constructive desertion". But these do not establish, as a fact, that desertion must consist solely in a wilful and malicious act of physical departure on the part of respondent. Judge Orlady's observation was merely a statement following the clear language of the act which then obtained and which, like all subsequent acts, made no reference to constructive desertion. Judge Head, in his statement, was using the term as a synonym for fictitious. Neither of these decisions directly or impliedly excluded as desertion those instances which differ from ordinary desertion but which are, in fact, actual desertion

within the meaning of the statute. An examination of many situations which are loosely termed "constructive desertion" clearly discloses that the facts as established actually constitute desertion within the contemplation of law. For example, in the much cited and discussed case of Howe v. Howe, 16 Pa. Superior Ct. 193, libellant left respondent after a long and continued course of brutal treatment which culminated in a threat to shoot her if she did not go home. There the court said (p. 198) :

"In cases like the present, when the wife is obliged by the cruelty or violence of her husband to leave him for safety and to avoid personal injury, her compulsory flight amounts to desertion by him."

Undoubtedly, this case would be termed a constructive desertion case by many lawyers and it was, in fact, cited by Freedman in his section dealing with that subject. However, it will be observed that the court used the phrase "amounts to desertion by him". In other words, this set of facts did not constitute a constructive or an inferential desertion; it actually "amounted" to desertion.

When the Divorce Law of May 2, 1929, P. L. 1237, was enacted, desertion, as that term was used, was a well-understood and well-defined condition. Section 10(d) of the code provides, inter alia, that a divorce may be granted when the guilty spouse "shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years; . . ." We must construe the word desertion as thus used in its accepted meaning at the time the code was enacted: Smrekar v. J. & L. Steel Corp., 137 Pa. Superior Ct. 183, 191. Certainly Howe v. Howe, supra, was definitive of that term, as was Grove's Appeal, 37 Pa. 443, where the wife sued for divorce on the grounds that she had been turned out of doors and where the court referred to respondent's

conduct as an actual turning out of doors or "constructively" at least. There were many other cases establishing the nature of desertion or its equivalent "turning out of doors" (as for example Gordon v. Gordon, 48 Pa. 226) so as to impart full meaning to the term desertion as used in the statute. Despite Judge Orlady's assertion that constructive desertion was unknown to our law, we find that term used as early as 1879. In Sowers' Appeal, 89 Pa. 173, the lower court said this (p. 178):

"The proper answer to this question [whether respondent's conduct forced libellant to withdraw from his home] will furnish an answer as well to the other material point on which the libellant rests her case, namely, whether she was, in a true legal sense, turned out of doors by the respondent; for if this is established, then the husband has, in law, constructively deserted his wife, . . ."

The Supreme Court affirmed with the conclusion that the facts and principles of law were so well, accurately and impartially stated that nothing further could be added.

In Breinig v. Meitzler, 23 Pa. 156 (1854) the Supreme Court described the course of conduct which would justify a spouse in leaving the common home as "personal violence, whether actually inflicted or only threatened . . ." In Hirch v. Hirch, 70 Pa. Superior Ct. 583, the court was satisfied that respondent was guilty of malicious and wilful desertion because libellant left her when she nagged him, used intemperate language, tore his clothing, sold his furniture and tools and threatened to throw vitriol in his face if he returned to the home.*

---

* See Young v. Young, 82 Pa. Superior Ct. 492, which rejected indignities as justification for a husband's withdrawal from his wife. But this case was decided on the basis of statutory provisions relating to alimony and ignores Howe v. Howe and Hirch v. Hirch, supra, both of which were cited by appellee.

It therefore appears that the question of constructive desertion can be distilled into one simple postulate. If a set of facts comes within the meaning of the word "desertion" as that term was understood at the time our divorce code was enacted, then there are grounds for divorce regardless of terminology.

With these observations in mind we must turn to the facts in hand to determine whether or not there was an actual desertion within the meaning of the code.

It will immediately be observed that respondent employed no violence or threat of violence in her invitation to libellant to leave the premises. Nor was there any conduct at all which is explanatory of libellant's act of departure. Surely, the admission into the common home of an habitual drunkard presents no problem to the husband. As master of his home he need only to have asserted his position as such in order to accomplish that which he sought to do by pleading and begging. There is no complaint that respondent had dishonored the home by adulterous conduct as was the case in Rinewalt v. Rinewalt, 37 Mont. 148, or that there was anything improper in her relationship with her roomer. As Judge Trexler said in Magee v. Magee, 4 Lehigh 404, "He [the libellant] was the master of the family and was not required to take orders from his wife."

Our conclusion is that libellant's departure from the common home was not justified under the circumstances and that the facts in this case clearly indicate a consensual separation. The term "constructive desertion" is no philosopher's stone which will, by some inexplicable alchemy, convert a consensual separation into statutory desertion.

And now, to wit, July 5, 1946, the master's recommendation is set aside and the libel is dismissed at the cost of libellant.