## Sowers's Appeal.

A divorce *à mensâ thoro* will not be granted at the suit of the wife, on the ground that she was turned out of doors, where it is not shown that she was ejected by force, or was compelled to leave, because of a threat to employ it, and a reasonable apprehension that it would be used against her; or a refusal to receive her upon demand that she should be taken into her husband's house as a wife ; or an emphatic refusal to allow her to remain after she had returned, accompanied by the declaration that she wished to remain, and conduct herself as a wife should do ; or lastly, where the facts do not show a justification on the part of the wife, in withdrawing from the house of her husband.

February 17th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term 1877, No. 69½.

Libel in divorce *à mensâ et thoro* filed by Josephine Gordon Sowers, by her next friend, William A. Gordon, against William H. Sowers.

The substance of the libel and the answer of respondent, together with the material facts, are stated in the following opinion of Allison, P. J.

[Sowers's Appeal.]

"This is a proceeding for divorce à *mensâ et thoro*; it is instituted by the wife, Josephine G. Sowers, by her next friend, against her husband, William H. Sowers, to whom she was married at Georgetown, in the District of Columbia, on the 19th of May 1870, and who immediately after her marriage removed to Germantown, the residence of her husband, where, as man and wife, Mr. and Mrs. Sowers continued to reside until the 24th day of December 1873. Mrs. Sowers testifies that on that day she went from Germantown to Georgetown to make a visit to her friends, and that she has never returned to her home in Germantown.

"The reasons for remaining separate from her husband are, that the respondent turned her out of doors, and that he offered such indignities to her person as to render her condition intolerable and life burdensome; thereby forcing her to withdraw from his house and family.

"The answer of the respondent expressly denies both allegations. A large amount of testimony has been taken in support on one hand, and in denial on the other, upon the vital questions which are presented by the libel and the answer.

"Under the second head of legal justification in separating herself from her husband, the libellant charges against him, that he insulted her by false, slanderous and approbrious epithets. That he, at various times, and for long periods of time, refused to speak to her; that when absent from him he neglected to write to her. That he neglected to meet her at the depot on one occasion, on her return from a visit to Georgetown. That he addressed insulting letters to her; and that he has neglected her since she has become a mother, in refusing to receive her into his house, and in not contributing means for the support of herself and her child. The child was born at Georgetown, after the libellant last left the home of her husband, on the 24th of December 1874, and has never been seen by the respondent.

"The first two of these allegations can not be regarded as established by the proofs. They are supported mainly by the testimony of the libellant and are contradicted by the testimony of the respondent. The credibility of these parties standing in the relation of witnesses to their own cause has not been impeached. They are both esteemed by their friends and acquaintances as worthy of confidence and regard, and each of them holds now, as they have always held, a respectable position in society. They have each testified, as we are bound to presume, according to an honest belief; but they have seen and heard, as well as acted their several parts, from different standpoints; real or supposed causes of complaint have given tone and color to the transactions of which they have testified, and this, we doubt not, is substantially a correct explanation of that which would otherwise seem to be wilfully false in statement. The occurrences which followed, when remarks which

had been made to the husband were repeated to the wife, touching the frequent and protracted absence of Mrs. Sowers at Georgetown, are an illustration of how differently they are stated and explained by the parties. Mrs. Sowers regarded them as an imputation upon her honor as a wife, causing her at the time to withdraw from the society of her husband, and to pass the night alone in great distress of mind, in a room adjoining that in which he slept. Mr. Sowers's account of what passed is, that his statement to his wife was intended to inform her that her visits to Georgetown were made the occasion of unpleasant suggestion and remark by his acquaintances; that he had no intention of conveying to her any other impression than that this was the case, and that it was done to protect himself from future annoyance, and because he felt it to be a duty which he owed to his wife, to state to her the remarks to which her absence gave rise; he asserts the full confidence which he has now, and ever has had, in the purity and integrity of his wife, and that he so assured her.

"That Mr. Sowers's treatment of his wife in the presence of strangers was always kind and respectful, and even affectionate, according to the testimony of several of the witnesses, is established by the proofs. This, indeed, is admitted by the libellant, and whatever of truth there may be in the charge that respondent was in the habit of applying profane and opprobrious epithets to his wife when they were alone or when none but the family were present, must be regarded as supported almost wholly by the testimony of the libellant. The single exception, as we are able to recall the testimony, is the occasion at dinner, testified to by the servant, Winnie Price, upon whose evidence considerable doubt is cast, contradicted as it is by the statements of the mother of the respondent and by the respondent himself; considered also, as it should be, in connection with the motive of the witness, and that it was not heard by the servant who waited on the table, and the testimony of a number of witnesses that it was not the habit of the respondent to use profane language. Aside, therefore, from the single occasion sworn to by the witness Price, the allegation of the use by the husband of profane and opprobrious language addressed to his wife must be regarded as resting upon her testimony alone, and in view of the fact that it is met by the positive denial of the respondent, it cannot be regarded as a fact proved in the cause.

"It cannot be questioned, that there was at times contention, ill feeling, and the expression of mutual dissatisfaction with the situation and conduct of both husband and wife, each toward the other, and that the respondent, on various occasions, for a longer or shorter period of time, when these feelings were in the ascendant, refused to speak to the libellant; the testimony is, however, contradictory as to the period of time for which this treatment on his part would continue; that it was a grievance which weighed heavily on the

[Sowers's Appeal.]

libellant cannot be doubted.   But unfortunate and improper as this conduct on the part of the husband may have been, it is not entitled to much consideration in making up a judgment upon the question, whether or not the respondent offered such indignities to the person of the wife as to render her condition intolerable and her life burdensome.   This conduct of the husband was, according to the testimony of the libellant, but occasional; she says, after the cloud came forth the sun, and if the home of the husband and the wife was at times disturbed by disagreement and anger, it resulted from the fact that each had cause for real or supposed complaint against the other.   The husband, soon after his marriage, came to the conclusion that he held but a secondary place in the affections of his wife.   That her father's home and family, and the enjoyment of the society of her friends in Georgetown, were set above all proper consideration for him and his relatives and friends, and that this was evinced by the several protracted visits which she made to Georgetown in each year, and as he says in his testimony, by her declarations of contempt for him, as well as for the members of his family; to this latter allegation, it should be here stated, Mrs. Sowers has given an emphatic contradiction, so far at least as her husband is concerned, and in turn asserts, that she found her situation in the home of the mother of the respondent one of discomfort to her.   To this she adds the unkind treatment of her husband, to which we have referred; that he refused to supply her with sufficient amount of spending money for her personal use; that he used intoxicating liquors immoderately; that he neglected many personal attentions, which had been accorded to her, and which she thought was due to her.   These things, she says, rendered her condition intolerable, and were injurious to her health.

" The fact, however, is clearly established by the testimony, and by the admissions of the libellant, that her home was one in which every necessary want was supplied, and many luxuries furnished to her.   She was always treated with respect by the subordinates of the household; horses and carriages were at her command; her time was her own; nor was task or restraint imposed upon her. She was frequently accompanied by her husband in her visits and in her drives, and also in her attendance at church.   To the world, at least, her home was a happy one.   The disagreement between herself and her husband was carefully concealed from public view; nor does it appear that any one thing requisite to her comfort was denied her, if we except her limited supply of spending or pocket money, and the refusal of the respondent to gratify, on one occasion, her desire for an expensive winter wrap, and withholding his consent to her having a pony phæton, furnished or proposed to be given to her by her brother.   These are luxuries with which the law does not require a husband, situate as was the respondent, to supply his wife.   It does not appear from the testimony that Mr.

[Sowers's Appeal.]

Sowers is possessed of great wealth; and though he is engaged in varied and active business, from which he receives a considerable income, it is not such as to require him to respond to every demand which may be made upon him. To his wife's request for spending money, and for a fixed allowance, he testifies that his reply to her was that he gave her all that he could afford to bestow upon her for her private expenditures.

" We put out of the libellant's statement of grievances her allegation that her husband neglected to meet her at the Germantown Junction, several miles from her home, on her return from a visit to Georgetown. Mrs. Sowers might well have omitted this from her complaint. Smarting under the irritation of the seeming neglect, instead of going to her home after so long an absence from it, and seeking an explanation from her husband, if one was required, for this omission of an accustomed attention on his part, she turned away from her home, when almost at its door, and sought the protection of acquaintances in the city, sending no word until the next morning where she was, though she knew her return was expected that evening, the testimony showing that preparation had been made for her reception. This is aside from the explanation given by Mr. Sowers, which, if correctly stated, accounts satisfactorily for his failure to meet Mrs. Sowers in accordance with his usual habit on such occasions.

" The most serious and important of all the charges under this head, which are made by the wife against her husband, grew out of his letter to her of February 3d 1874, and his refusal to contribute means of support to his wife and child. Mrs. Sowers had been absent from her home from the 24th of December 1873, on a visit to Georgetown. On January 1st 1874, she informed her husband by letter of her intention to return to him on the fifth of that month. The material portions of respondent's letter begins with the third paragraph, in which he writes : ' I shall not receive you. You left my bed and board without my permission. You have daily and hourly insulted me and treated me with the utmost contempt. By the laws of my state I cannot refuse you admittance. * * * Your family have played an infamous part in this business, and I suppose they are satisfied, when they are able to keep you six weeks in the hands of your old lovers.'

" To this letter Mrs. Sowers did not reply, but her brother wrote to the respondent immediately on the receipt of it, saying : ' She will now remain with those who know how to appreciate her,' and asking that her individual property, clothing, &c., should be sent to her. The decision of Mrs. Sowers to remain in Georgetown is placed by her brother on the ground of a refusal of Mr. Sowers to receive his wife into his house. From that time all direct communication between the libellant and the respondent ceased. She did not write to him informing him of the birth of their child, though

8 NORRIS—12

her physician did; and the respondent asserts, and makes it one of his causes of complaint, that when she left him, on the 24th of December, he did not know that she expected to become a mother, asserting that she had kept from him all knowledge of her situation. This assertion of the respondent is denied by the libellant, and in connection with this denial she charges against her husband, as an act of cruelty, that he has made no inquiries about her or her child. In her testimony she says: 'He has never contributed one penny towards the _support of either of us; he has never visited either of us.'

. "This letter and the subsequent conduct of the respondent, in so far at least as his neglect of his child is concerned, is indefensible. No one, and more especially one occupying the position which the respondent occupies, can justify the writing of such a letter to his wife, however great his real or his fancied provocation. It indicates a violence of spirit and contains a harshness of expression that must have deeply grieved and wounded the sensibilities of Mrs. Sowers; and however the respondent may have felt himself justified in withholding support from his wife while absent from him, as he asserts, without his permission, the innocent ought not to have been made to suffer with the guilty. His child has a just claim upon him for the manifestation of a father's love for his offspring, as well as for protection and the supply of its material wants. The law of nature and the law of the land alike demand the fulfilment of these obligations. That they were withheld gives to libellant a just cause of complaint, aside from the question whether this grievance alone, or considered in connection with her other grounds of objection to the conduct of her husband, gives to her a legal right to the divorce from bed and board which she prays may be awarded to her.

"But, conceding the full force of this fact, it yet remains to be considered in its legal aspect, whether it can, in any proper sense, be regarded as such cruel and barbarous treatment as constitutes an indignity to her person, which rendered her condition intolerable and her life burdensome, so that she was forced to withdraw herself or to remain away from the house and family of her husband. That it cannot be regarded in this light must, we think, be admitted, if the letter of February 13th 1874 can properly be interpreted in the sense in which the respondent claims it ought to be interpreted, and which, he asserts, it was intended to express. The proper answer to this question will furnish an answer as well to the other material point on which the libellant rests her case, namely, whether she was, in a true legal sense, turned out of doors by the respondent; for if this is established, then the husband has, in law, constructively deserted his wife, and having persisted in such desertion for two years, a divorce must be decreed. McDermott's Appeal, 8 W. & S. 257, is the leading case in Pennsylvania, establishing the

doctrine that the refusal of a husband to receive his wife into his home is a virtual turning her out of doors. GIBSON, C. J., places the decision of the Supreme Court on the ground that our statute is a municipal regulation for the protection of the community as well as the wife. That it was sufficient to show that a wife who had followed her husband from Ireland was refused maintenance and admission to his house. The decree of the court below was affirmed on this ground alone. McDermott's Appeal has ever since been regarded as a correct interpretation of the statute on which these proceedings are based.

" The authority of this case is recognised in Grove's Appeal, 1 Wright 443. The original libel in that case set up an actual turning out of doors, which was subsequently allowed to be amended, by asserting that the wife, while living separate and apart from her husband, being desirous of returning to him, repeatedly offered and was willing to return and live with him as a true and dutiful wife, but that her husband refused to permit her so to do. The testimony of one witness showed that on a cold and snowy night in January, with her two small children, she went to her husband's house; she had difficulty in obtaining admittance, and was allowed to remain ten minutes to warm herself, when her husband told her to go. She begged to be allowed to stay, when he took her by the arm and pushed her out. Several witnesses proved that on different occasions she expressed a desire to go back and live with her husband, but that he steadily refused to receive her. This was held to be an *actual* turning out of doors, according to the testimony of two of the witnesses, or, at all events, constructively and substantially, as proved by other witnesses.

" So, also, in Gordon v. Gordon, 12 Wright 226, the court instructed the jury that the refusal of the husband to permit his wife to remain in his house was a sufficient turning out of doors to entitle her to a verdict. This instruction was affirmed by the Supreme Court, as they say, with reluctance; the evidence showing conduct on the part of the wife the most reprehensible, insults and gross personal indignities to her husband, yet it was not sufficient to justify him in turning her out of doors, because it fell short of proving conduct on her part which amounted to cruel and barbarous treatment, which rendered his condition intolerable and life burdensome. Under the authority of these cases does the letter upon which the libellant rests this issue in the cause constitute a turning out of doors? It falls very far short of the facts upon which McDermott's Appeal was decided. Grove's Appeal is a still greater remove from it. In Gordon v. Gordon the questions of actual and constructive turning out of doors was left to the jury, the testimony sustaining the entire charge, if believed by the jury. Under the latter allegation it was proved that the wife returned to her husband's house and requested permission to remain and live with him,

which was refused, accompanied by an order that she should leave the house and a threat to call in an officer to eject her.

"In May *v.* May, 12 P. F. Smith 206, cited in support of the demand of the libellant in this case, the question of actual turning out of doors was not raised. The husband's proposition to allow his wife to return to his house and occupy a small sleeping-room, have care of her children, and eat at his table, but on the condition that she was denied all control of the house; was required to take a position in the family subordinate to a servant who had treated her unkindly; this, in connection with the proof that he whipped her with a cowhide, treated her with cruelty and neglect in her confinement, inflicted personal violence, which was evidenced by her screams and the marks upon her person, was all submitted to the jury upon the question of infliction of indignities to the person, which justified the wife in withdrawing from the family of her husband. These facts make out a case widely different from that of the libellant, who has never manifested a desire to return to her husband, nor has she asked an explanation of the letter upon which libellant and respondent have placed such opposing interpretations. If the conduct of the respondent is to be judged by the letter of the fifth day of February it falls very far below the facts proved in the case of May *v.* May. We have the oath of the respondent in support of the allegation, that no more was meant by the expression than that he would not meet her at the junction, as he had done on all prior occasions, except the one to which we have referred, and that all her accustomed privileges in the home of his mother, which was his home also, were reserved for his wife; that her room was prepared for her reception and has been kept awaiting her return ever since. Whether this is a correct explanation of the declaration that he would not receive his wife, we have no means of determining, except the oath of the respondent, and the qualifying statement in the letter, that "by the laws of my state I cannot refuse you admittance." The libellant, placing her own construction on this letter, has thought proper to rest upon that construction and remain in Georgetown separate and apart from the respondent.

"We have no case in Pennsylvania in which the suit of the wife was maintained on the ground that she was turned out of doors, where it was not shown that the wife was ejected by force, or was compelled to leave because of a threat to employ it, and a reasonable apprehension that it would be used against her; or a refusal to receive her upon demand that she should be taken into her husband's home as wife; or an emphatic refusal to allow her to remain after she had returned, accompanied by the declaration of a wish to remain and 'behave herself as a good wife ought to do.' Or lastly, where the facts did not show a justification on the part of the wife in withdrawing from the home of her husband—facts which would entitle her to a divorce in her suit against an offending husband.'

"This case does not, in our judgment, come up to the requirements of the law on either ground on which the libellant rests her suit; we therefore refuse to grant the divorce from bed and board for which she prays."

The court then dismissed the libel, when Mrs. Sowers took this appeal, alleging that the court erred in holding that the facts proved in this case did not amount to a turning of the libellant out of doors by the respondent; in holding that the facts, as proved, did not show cruel and barbarous treatment of the libellant by the respondent; and in dismissing the libel.

*George Tucker Bispham* and *Wayne Mac Veagh*, for the appellant.—A refusal by a husband to receive his wife into his house is a "turning out of doors" within the meaning of the Act of February 26th 1817: McDermott's Appeal, 8 W. & S. 251; Grove's Appeal, 1 Wright 443. There has been a *literal* refusal by the respondent to receive the libellant. Of course, it is the *intention* with which language is used which is to be looked at, and if it could be shown that it was not the *intention* of the respondent that the words were to be taken in their literal sense and that *that* intention was communicated to the libellant, the presumption that a turning-out of doors was designed would be rebutted. But in point of fact, when the case comes to be investigated it is found that all the circumstances indicate that the literal meaning of these words is the sense in which the respondent used them and *intended* that they should be understood. This is apparent from the context, from the action of the respondent immediately after writing the letter, and from his conduct before and since that date. The letter of Feb. 3d 1874, is full of reproaches, of insulting phrases, and still more insulting insinuations and charges. It is not the letter of a man who wants his wife to come back. It is consistent with the literal meaning of the words "I shall not receive you." It is inconsistent with any other or different meaning. Again, when the libellant's brother wrote to the respondent, informing him that in consequence of his refusal to receive his wife she would thenceforth remain at his (the brother's) house, it was a notification to the husband that the literal meaning of his words had been taken as the correct exposition of his intention. If the husband then knew that this impression was erroneous and that it was *not* his intention to refuse his wife admittance, surely it was his duty to have said so and to have removed the erroneous impression. But he did nothing to disabuse the mind of the libellant of the impression which had been conveyed to it; on the contrary, he confirmed and acquiesced in the interpretation which had been put upon his letter by sending the libellant's clothes and articles of jewelry to Georgetown. After sending this letter the respondent made no inquiries about the libellant or his child.

[Sowers's Appeal.]

The court seemed to think that, under the Pennsylvania authori-, ties, something more was required than a mere refusal to receive— that is to say, that the refusal must be supplemented either by actual turning out of doors, or by some formal demand for admittance on the part of the wife, or by some cruel and barbarous treatment. In McDermott's Appeal there was no actual turning out of doors; there was no violence; there was no cruel and barbarous treatment; nor was there even a formal demand upon the part of the wife to be admitted.

It is not necessary, to entitle the libellant to a divorce, that there should be blows, or any other form of actual violence. A course of humiliating insults and annoyances, calculated to destroy the life or health of the wife, although unaccompanied by actual violence, is sufficient cause for a divorce: Butler *v*. Butler, 1 Pars. 329. Whenever the course of treatment is such as to render her condition intolerable and life burdensome, there is ground for a divorce. "What acts or course of conduct will amount to such indignities seems to be nowhere defined, and perhaps they are incapable of specification or exact definition:" May *v*. May, 12 P. F. Smith 210. See McClurg's Appeal, 16 P. F. Smith 366. Each case, therefore, must stand on its own ground; and the question for the court to consider is whether an analysis of the evidence in the present case shows such a course of treatment as fairly falls within the meaning of the Act of Assembly.

*W. Wynne Wister, Jr.*, and *F. Carroll Brewster*, for appellee. —To bring this case within the terms of the act, the husband must have actually closed the doors of his house to his wife—must have intentionally have denied her admittance. In McDermott's Appeal, *supra*, there was a positive refusal by the husband to admit the wife to his house. So in Grove's Appeal, the husband persistently refused to receive the wife. No wish or intention to return to her husband's house is made in the case at bar, and distinguishes it from Gordon *v*. Gordon, 12 Wright 226. The respondent offered no such indignities to the person of libellant as to render her condition intolerable and life burdensome: May *v*. May, *supra*; Butler *v*. Butler, *supra*; Cheatham *v*. Cheatham, 10 Mo. 296. The indignities contemplated by the act are a persistent course of treatment such as renders the wife's life intolerable: Elmes *v*. Elmes, 9 Barr 166; Richards *v*. Richards, 1 Wright 225, and a manifest design to injure or annoy: May *v*. May, *supra*; McClurg's Appeal, 16 P. F. Smith 366. Here the quarrels were only occasional, while she had every necessary want and many luxuries supplied her. Courts will consider whether the conduct of the wife drew from the husband the conduct of which she complains: Bishop on Divorce, vol. 1, § 797. Indignities, if provoked by the complaining party, are no ground for divorce: Mayhugh *v*. Mayhugh, 7 B. Monr. 424;

[Sowers's Appeal.]

Johnson v. Johnson, 14 Cal. 459. The respondent never refused to contribute to the support of his child. His wife was designedly absent from home, and the fact that under such circumstances he did not volunteer to support the child can hardly be charged against him as an indignity to his wife. It is questionable whether, when a husband furnishes his wife with a comfortable home, it is his duty to tender her pecuniary assistance when she voluntarily absents herself therefrom.

The judgment of the Supreme Court was entered March 17th 1879,

PER CURIAM.—After a very careful examination of the evidence in this case, we are of opinion that the facts and principles of law upon which it ought to be decided are so well, accurately and impartially stated in the opinion of the learned president of the court below, that nothing need be added to enforce and confirm the conclusion at which he arrived.

Decree affirmed, and appeal dismissed at the costs of the appellant.