## Sharp v. Sharp, Appellant.

*Divorce—Desertion — Evidence — Correspondence—Res adjudicata.*

Where a wife institutes proceedings in divorce against her husband on the ground of adultery, and a jury return a verdict in favor of the husband, the correspondence between the counsel of the respective parties relating to the adultery of the husband is not admissible at the trial of an issue in a subsequent divorce proceeding instituted by the husband against his wife for desertion.

*Divorce—Desertion by wife—Offer to furnish home.*

Where a wife separates from her husband, and ten months there-

after the husband makes overtures for a renewal of the marital relations, which overtures are refused, and twelve years thereafter the husband files a libel for divorce in desertion, a judgment on a verdict for the husband will be sustained, where it appears that the husband was a practicing physician; that he leased for a term of years a three-story brick house occupied by a physician who had recently died; that he proposed to occupy exclusively for his family the first and second floors of the house and rent the third floor; that he offered the two floors as a home to the libellant; that the wife objected to the neighborhood, insisting on having a separate building for the sole occupancy of the family; and that she persisted in refusing to return, although her husband made repeated requests to her to do so.

Argued Oct. 13, 1916. Appeal, No. 29, Oct. T., 1916, by defendant, from decree of C. P. No. 5, Philadelphia Co., Dec. T., 1913, No. 418, awarding divorce in case of Leedom Sharp v. Fannie A. Sharp. Before Orlady, P. J., Porter, Henderson, Head, Kephart, Trexler and Williams, JJ. Affirmed.

Libel for divorce. Before Ralston, J.

The court charged in part as follows:

The libellant in this case, Dr. Leedom Sharp, is suing the respondent, his wife, for divorce on the ground that she wilfully and maliciously deserted him on or about June 6, 1901.

A wife is bound to follow her husband, the husband having the right to choose the habitation, if he selects a proper and suitable place for his wife to live, she is bound to go with him. A wilful and malicious desertion means that the respondent, without legal cause, has left the libellant and remained away for two years or more. If a man and his wife part by mutual consent, there is no wilful desertion, but there is no evidence of that in this case.

The circumstances of this case are somewhat peculiar. The parties separated about eighteen years ago. It appears that Mrs. Sharp left her husband in 1897 and that they have never lived together since that time. Some-

time after that, Dr. Sharp brought an action for divorce against his wife on the ground of desertion, and she brought an action against him on the ground of adultery, each seeking a divorce from the other on the ground stated. Those cases were tried together, and came before the court in the usual way, and on June 22, 1900, both cases were dismissed by the court. It was shown by the records produced that Dr. Sharp's case was dismissed on June 22, 1900, and counsel informs me that Mrs. Sharp's case against the doctor was dismissed at the same time.

Now, gentlemen, what was the status of the parties then? Each had tried to get a divorce from the other, and the court was of the opinion that neither of them had made out a case entitling him or her to a divorce. Consequently, as decided by the court at that time, neither of them had any right to separate from the other. Therefore, in the consideration of this case, we start fresh, so to speak, after the date when those divorce cases were settled and ended, and that was, as I have said, on June 22, 1900. In the following April, that is, eight or nine months later, Dr. Sharp, through his counsel, Mr. White, wrote to the counsel for Mrs. Sharp, Mr. Williams, of Simpson, Brown and Williams, the letter which you have heard read in evidence. In that letter, the libellant stated that he wanted his wife to come back and live with him; he stated that he had provided a home for her and his child; he told them where the house was and exactly what accommodations he had in it for them; he said that he had acquired, I think he testified by purchase, the practice of a Dr. Gillespie, who had lived with his wife and family at No. 2038 South Thirteenth street and who died; that Mrs. Gillespie and other members of her family, she being a highly respectable lady, he said, lived in the third floor of this house, and that he had taken the second floor, consisting of two large bedrooms, a bathroom and a parlor, as well as the parlor downstairs, which he was using as an office and waiting room. He stated to the respondent that if she would come there she would be comfortable,

more so than in the place where she had been living.
Counsel for the respondent answered that letter and you
heard the answer read.   After that, Dr. Sharp wrote to
his wife, and she wrote to him in reply, and he wrote
again and she replied on the 6th of June, 1901.   In his
letters, he renewed his offer to his wife.   He told her that
he had mended his ways, whatever his ways may have
been before—and that for some time he had been living
in a manner that no reasonable woman could object to,
and that if she would come and live with him, he would
continue in that course of life.   She replied, making
objection—intimating that he did not write in good faith,
and that the place referred to was not a proper place to
ask her and her daughter to live; she stated that it was
not a neighborhood where she wanted her child brought
up.   In short, while not actually saying that she would
not go to the place referred to and live with the libel-
lant, she said that it was not reasonable for him to ask
her to go.   She did not go, and has not gone since, and
that was more than fourteen years ago.

The respondent's reasons for not going with her hus-
band at that time she has stated to you, and it is urged on
her behalf that this offer made by the libellant and his
counsel was not made in good faith—that he did not in-
tend it to be accepted by his wife, but that he made it
simply for the purpose of establishing a desertion at that
time.

From the evidence which you have, you must decide
whether that offer was or was not a bona fide offer.   That
is to say, whether Dr. Sharp made it in good faith, and
whether he had provided at the time he made the offer,
a decent and proper home for his wife and daughter.   If
you find that he wrote and made the offer in good faith,
and that he had provided a proper place for them to live,
then the refusal of the wife to go there would constitute
a wilful and malicious desertion, and you should render
a verdict in favor of the libellant.

On the other hand, if you find from the way in which

181, (1916).] Charge of Court below—Opinion of the Court.

the letters are written, from the man's manner on the stand, or from any other evidence in the case, that the libellant did not make the offer in good faith, that he did not intend his wife to accept the offer, or that he did not have a proper place for her to go, and that he wrote simply for the purpose of laying a ground for divorce, then your verdict should be in favor of the respondent.

The evidence is not at all complicated, and you have heard the very able counsel upon both sides address you fully, and each of them has given to you his respective views of the evidence. Those arguments in this case, as in all cases, are entitled to the most respectful consideration of the jury.

From all the testimony, gentlemen, you must make up your minds whether the respondent wilfully and maliciously deserted the libellant, on or about the sixth day of June, 1901. If you find that she did, you must render a verdict for the libellant. If you find that she did not, you must render a verdict for the respondent.

Verdict and decree for libellant. Defendant appealed.

*Errors assigned* were refusal to admit the letters referred to in the opinion of the Superior Court, and various instructions.

*Palmer Watson,* with him *Samuel G. Birnie,* for appellant.—It would seem that if libellant did not make the offer with a desire that it be accepted, on the face of it, it was not a bona fide offer: Angier v. Angier, 63 Pa. 450; Gordon v. Gordon, 208 Pa. 186; Ball v. Ball, 8 Dist. 678; Eisenberg v. Eisenberg, 1 Pa. C. C. R. 590; Chambers v. Chambers, 20 Pa. C. C. R. 41.

*Henry J. Scott,* with him *Byron A. Miller,* for appellee.

OPINION BY ORLADY, P. J., December 18, 1916:

The above parties were married February 26, 1884,

and after living together as husband and wife until 1897, the wife left her husband's home.   In 1898, the wife instituted proceedings in divorce against her husband on the ground of his adultery, and in 1899 the husband began a similar proceeding against his wife in which he alleged her desertion.

These issues were tried June 22, 1900, in Common Pleas No. 1, when each action was dismissed for want of adequate proof.

About ten months later, the husband made overtures to his wife for a renewal of the marital relation, and after considerable correspondence between the parties, and between their respective attorneys no reconciliation was effected.   This action by the husband was then begun November 22, 1913, in which the wife is charged with desertion, and culminated in a trial before a jury with a verdict on November 4, 1915, in favor of the husband.

The first assignment of error relates to the exclusion, under objection, of parts of letters written in 1901 by counsel of the wife, to the counsel of the husband, and these were properly excluded for the reason that they related wholly to incidents preceding the earlier divorce proceedings, at which trial it was decided by a jury that the offense they suggested did not exist, hence these facts could have no bearing on the issue being heard.   The principal contentions of the wife were that the husband was bound "to provide a home in which he should live with his wife and child by themselves, and without other inmates of the home, except such as were a part of their family" (fifth assgt.) ; "That the attempts to effect a reconciliation, were not made in good faith, and with a sincere desire, upon the part of the libellant at the time they were made, that they should be accepted by the respondent" (tenth assgt.).

These propositions were well disposed of by the court in saying to the jury, "From the evidence which you have, you must decide whether that offer was or was not a bona fide offer, whether it was made in good faith, and

whether he had provided at the time he made the offer, a decent and proper home for his wife and daughter. If you find that he wrote and made the offer in good faith and that he provided a proper place for them to live, then the refusal of the wife to go there would constitute a wilful and malicious desertion, and you should render a verdict in favor of the libellant.......On the other hand if you find, from the way in which the letters are written, from his manner on the stand, from any other evidence in the case, that he did not make the offer in good faith, and did not intend his wife to accept the offer, or that he did not have a proper place for her to go, that he wrote simply for the purpose of laying a ground for divorce, your verdict should be for the respondent."

It appears, that the offer was made to "again take Mrs. Sharp back, together with their daughter and furnish them with a home thoroughly suitable to their condition in life and his means of subsistence."

The libellant was a medical practitioner, and while he was seeking to establish a practice, he leased for the term of three years, a three story brick house, which had been occupied by a physician who had recently died. His family would have exclusive possession of the first and second floors of this building. The wife objected to the neighborhood, and though repeated requests were made by the husband for her return, she declined and persisted in remaining apart from him for more than twelve years before this suit was brought. Her insistence on having a separate building for their sole occupancy was not reasonable under the present congested conditions controlling home life in a city, and but few persons can hope for, much less maintain, such an establishment. The question of his good faith could only be determined by the jury in the light of all the circumstances, and no case has yet fixed the gauge of good faith in such an offer to be "a sincere desire that his offer be accepted."

Good faith or the want of it, is not a visible, tangible

fact that can be seen and touched, but rather a state or condition of mind which can only be judged of by actual or fancied tokens and signs.   It means free from design and fraud; honesty of intention; the opposite of bad faith; the doing of a thing honestly, and in this practical sense it must have been understood by the jury, under the clear and adequate charge of the trial judge.   The character and location of the proposed home was entirely for the jury and when at the time the offer was made the wife was living in a single room, and in the proffered place she would "have none of the onerous duties of keeping house" and after she had persisted in remaining apart from her husband for twelve years after the failure of the divorce proceedings, it is not surprising that the jury found that her objection was not made in good faith.

The trial was fairly conducted, and the verdict was clearly warranted by the testimony.   We find no error in this record to justify a reversal of the judgment.

The assignments are overruled and the judgment is affirmed.