## Thomas W. Goldsmith *v.* Bertha L. Goldsmith, Appellant.

*Divorce—Desertion—Evidence—Insufficiency.*

In an action in divorce on the ground of desertion, it appeared that the husband had been living apart from his wife, but had maintained friendly relations with her, and had from time to time urged her to return and live with him. Under such circumstances, in order to lay the foundation for constructive desertion, there must be a definite action on the part of the libellant notifying the respondent that he would sever his relations with her, and the date

of such constructive desertion must correspond to that mentioned in the libel. In the absence of such evidence a divorce should be refused.

Argued December 11, 1924. Appeal, No. 217, Oct. T., 1924, by respondent, from decree of C. P. No. 2, Phila. Co., June T., 1921, No. 158, granting a divorce in the case of Thomas W. Goldsmith v. Bertha L. Goldsmith. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in divorce. Before STERN, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to Leroy N. King, Esq., as master, who recommended that a divorce be granted. On exceptions to master's report the court dismissed the exceptions and granted the divorce.

*Jesse H. Finn,* for appellant.—The time of desertion must be proved as alleged in the libel: Brown v. Brown, 47 Pa. County Court Reports, Phila., page 181; Tannenbaum v. Tannenbaum, 18 Dist. R. 271.

*Joseph D. Lanard,* for appellee.

OPINION BY TREXLER, J., February 27, 1925:

The libel in divorce filed the 25th day of April, 1921, alleges marriage on the 20th of June, 1917, at Elkton, Maryland, and that the parties "lived together and cohabited in the relation of man and wife"; that thereafter the respondent deserted the libellant and absented herself from their habitation on the 11th day of November, 1919, in the City of Philadelphia. The libellant went into the army and came back on the 3d of May, 1919. He went to see his wife who was living with her mother but received an indifferent reception. He went upstairs and she would not look at him. She buried her face in

the pillow. He bought her a cot and got her to come downstairs. He alleges that he paid her doctor bills and board bills and everything and that he told her a number of times that he was getting ready to make a home. She wished him to make his home with her mother, but he would not do that. Later on he stated to her that his father had purchased a house for them and spoke to her about furnishing it at different times. Finally she told him the house that was bought was too far away from her mother's and he told her then "may be you will live with me later on, and she said no, I won't live with you," and he replied "very well." He still stuck to her. He went twice a week to see her as before, paid her board, gave her money to spend and bought her clothes. At Christmas he presented her with a sweater. In January, 1920, he got sick but she did not go to see him. The house they had intended to occupy was no longer available. This thing kept on and on. He gave her money, and paid her board and tried to get her to come out until finally on the 20th of August, 1920, he again asked her to live with him. He presented his final decision, "If you don't come with me, I am not coming up here any more and pay your board and everything." After that he stopped going. After the second week of August, 1920, he made another offer to have her come to live with him and in November, 1920, but she refused. January, 1921, she saw him and asked him to come live with her at her mother's, which he refused. In March, 1921, she went to the municipal court and started proceeding for desertion. He further states he never had any cohabitation with his wife, although his libel asserts the contrary. This is substantially his story.

She contradicts him in every particular. She produces the doctor who testifies that she was a sick woman, so sick in fact that she could do nothing. She was suffering from melancholia, would not go out, would not speak to any one. This condition gradually improved but must be considered in connection with his testimony.

where he stated that she would not talk to him, the reason for her manner toward him may have been occasioned by her condition. At the hearing held March 22, 1922, she testified that she was willing now to go and live with him if he would make a home for her. She denied that he paid her doctor or board bills or bought her any clothes except the sweater at Christmas. She states she heard nothing about the house being bought until February 20, 1920. The incident about the visit to Hog Island she testified that she was accompanied by her sister. He would give her no satisfaction. She asked him what the trouble was and he told her to go to see his mother. She is corroborated by her sister who accompanied her. She went to see his mother who informed her that he was not going to live with her, he was going to get a divorce and shut the door in her face. The sister inferentially contradicting his allegation of non access testified that he stayed with his wife one night until three o'clock.

The wife was not required to leave her home when she was sick. She was not responsible for her condition of melancholia. Although her action toward her husband seemed to have been cool and distant, still under the circumstances, it can be excused. Whilst the efforts of a husband to have his wife return to live with him does not affect his right to sue her for desertion, in the instant case she had not left his home and he acquiesced in the situation according to his own testimony. To lay the foundation for a constructive desertion, under such conditions, there must be some definite action on his part. The first notice that this wife had that he would sever his relations with her was in August, 1920. That is the day when they parted company. If there was any desertion it occurred then. The alternative was then presented to her. The date of desertion fixed in the libel, November 11, 1919, was not proven and there was no effort made to amend the libel at the hearing. When she came to him at Hog Island, if we assume, arguendo, that

Opinion of the Court.    [84 Pa. Superior Ct.

the period of desertion had begun at the time laid, it stopped then and there for she made an offer to live with him and he declined to hear it. We have no reason to doubt the bona fides of the offer.

The decree of the lower court is reversed. The libel is dismissed, appellee for costs.