## Barnes v. Barnes

W. A. Kramer, for libellant;   E. M. Biddle, Jr., for respondent.

REESE, P. J., May 3, 1934.—In the original libel filed herein, the libellant alleged that his wife deserted him on September 28, 1925. After the master had been appointed, respondent obtained leave to file an answer which denied any desertion. Thereafter, hearings were held before the master, and testimony was taken on behalf of both parties. Before the master made his report to the court, the libellant was duly granted leave to file an amended libel in which it was alleged that the desertion occurred on April 26, 1925. An answer was filed thereto, denying the desertion alleged. The master, after taking additional testimony, has filed a report recommending a decree of divorce. Exceptions to the report have been filed on behalf of the respondent.

The testimony clearly establishes that the parties were married on June 2, 1923, and immediately thereafter made their home at the residence of Mrs. Lewis, the respondent's mother, at Broomall, Delaware County, Pa.; where they continued to live together until April 26, 1925. Mary Ellen Barnes, libellant's daughter by a former marriage, born June 21, 1918, lived with them.

To establish desertion on April 26, 1925, as alleged in his amended libel, the libellant offered his own testimony as follows: On the morning of that date Dr. and Mrs. Barnes, libellant and respondent, had a dispute concerning Mary Ellen, at the conclusion of which Mrs. Barnes said: "I am going to pack Mary Ellen's grip, and you will have to get her out of here." Dr. Barnes remonstrated and referred to his responsibilities to his daughter, the respondent saying: "Well, if that's the way you feel about it, you can go right with her." At supper that evening, Dr. Barnes made a remark about planting a garden, but Mrs. Barnes said: "I don't think we will need much garden this summer; only mother and I will be here." Whereupon, Dr. Barnes asked: "Are you determined to carry out the intention that you expressed this morning as regards Mary Ellen and myself?" To this Mrs. Barnes replied: "I certainly am." Dr. Barnes then said: "There is nothing for us to do then but leave"; and his wife replied: "No." Thereafter Dr. Barnes and Mary Ellen left the house with their belongings, and the parties have not lived together since that time.

We will not determine whether the foregoing testimony establishes the facts therein stated. Part of it was corroborated by Mary Ellen, whose testimony was "not implicitly relied upon by the master", and much of the libellant's testimony was contradicted by the respondent. But, assuming the libellant's testimony to be correct, do the facts which he stated sustain his contention that the respondent "wilfully and maliciously deserted him without reasonable cause" on April 26, 1925? He contends that, because his wife ordered him to leave, their separation thereafter constituted desertion by her.

It must be carefully noted that the wife's command to the husband to leave was not accompanied by any force or threats thereof. Neither was there any cruelty or indignities to the person compelling the husband to withdraw. The husband's withdrawal was not the result of compulsion but was effected solely by the wife's verbal command that he should leave. We believe that under such circumstances the husband's withdrawal was entirely voluntary. His acquiescent yielding to his wife's command indicated a willingness on his part that they should live apart, and the separation which ensued was consented to by him. A sharp distinction should be drawn between a husband's voluntary submission to, and acquiescence in, his wife's command to leave and his compulsory withdrawal, effected by force or reasonable apprehension thereof produced by threats. In the former case, there is separation by consent; in the latter, a desertion by the wife.

We feel that our position is amply sustained by the decisions of our courts. A turning out of doors, in order to constitute desertion, must be either actual, by violence, or constructive, by threats: Border v. Border, 21 Dist. R. 749; Sowers' Appeal, 89 Pa. 173. In Magee v. Magee, 71 Pa. Superior Ct. 594. the court held that in ordering her husband to leave, the wife did not desert, because "there is an entire lack of evidence that the appellant was subjected to any compulsion which required him to leave." Where a spouse leaves the joint home "under dire compulsion", there is desertion by the other: Krebs v. Krebs, 109 Pa. Superior Ct. 175. To constitute desertion, a turning out of doors must be either by actual violence or a reasonable apprehension of it: Strang v. Strang, 11 D. & C. 300. In the case last cited, the court indicated that where a *wife* is compelled to leave by cruelty or indignities, such as would entitle her to a

divorce on that ground, there is a constructive desertion by the husband. But it has been held that where a *husband* is compelled to leave by cruelty or indignities, he cannot seek a divorce on the ground of desertion but must rely on cruelty or indignities as the ground for divorce: Young v. Young, 82 Pa. Superior Ct. 492.

Turning to cases in which the facts are closely similar to those in the instant case, we find that in Smith v. Smith, 4 Dist. R. 397, the wife owned the house, refused to cook meals, hid herself from her husband, compelled him to occupy a separate room, and commanded him to leave. Judge Stewart, later of the Supreme Court, made the following statement which squarely meets the contention of the present libellant: "He says that he did this [left] unwillingly, and only when ordered to do so by his wife, who owned the house. . . . His leaving under such circumstances would not constitute a constructive desertion by the wife".

In Magee v. Magee, 4 Leh. L. J. 404, Judge Trexler, now of the Superior Court, said: "The facts did not justify his leaving her. Her telling him to go, and stating that she would not live with him were not sufficient. He was the master of the family and was not required to take orders from his wife. Even where the wife owns the house such facts do not establish a constructive desertion."

In Lentz v. Lentz, 13 Leh. L. J. 54, where the facts were similar, the court said: "To transform his act of remaining away from the common habitation into a constructive desertion by the wife something more than her mere command that he remain away must be shown." In Lynch v. Lynch, 3 D. & C. 810, the wife ordered the husband to leave and threatened to shoot him if he did not do so. The wife kept a gun in her room, but the threat was not made there, nor did she have the gun when the threat was made. The court said: ". . . there seems to be nothing in the . . . threat which could be the basis of a reasonable and apparently well-grounded fear of it being carried into execution upon a mind of ordinary firmness . . . the respondent was not guilty of any constructive desertion". In Magee v. Magee, 71 Pa. Superior Ct. 594, the following appears: ". . . she ordered him out of the house, . . . she packed his clothing, and told him to leave, whereupon he departed and did not return. . . .

". . . It does not appear who held the lease of the house, but there is an entire lack of evidence that the appellant [libellant] was subjected to any compulsion which required him to leave."

On the other hand, in Rinewalt v. Rinewalt, 37 Montg. 148, the husband discovered that his wife had been guilty of infidelity in their common abode. A quarrel ensued, in which the wife struck her husband and told him to get out. He left, and immediately the wife's paramour moved into the house with her. The court held that where the home is dishonored and defiled by the wife the husband is practically driven from the house, and therefore constructive desertion has taken place. Of course, this case involved much more than a mere command to leave and is therefore distinguishable from the case at bar.

In Johnson v. Johnson, 27 Dist. R. 1014, the wife demanded that the husband leave and threatened to shoot him. Under a reasonable fear that she would shoot, the husband left and later sent a constable for his clothes. The court held there was a constructive desertion by the wife. The result in this case is justified by the decisions hereinabove cited, holding that to constitute a constructive desertion the withdrawal of the libellant must be compelled by force or threats. No such facts being adduced in the present case, it finds no precedent in Johnson v. Johnson, supra.

The libellant bases his contention chiefly on O'Keefe v. O'Keefe, 69 Pitts. 235. In that case, the husband was ordered by his wife to leave their common abode,

which belonged to her. On these facts the court felt that he did not leave willingly, that the wife evinced a purpose to get rid of him and was guilty of desertion. The court cites no cases for its position with which, in view of the many authorities herein cited, we cannot agree. Furthermore the case can be distinguished from the case at bar. In the case cited, the home belonged to the wife; in the instant case, to the wife's mother.

We conclude, therefore, that where a wife commands her husband to leave their common abode and he thereupon withdraws without any compulsion by force or threats there is no desertion by the wife. With this conclusion the learned master herein seems to agree, for he states in his report: "If there were no testimony in the case but that relating to the time of the separation (April 26, 1925), the libellant would not be entitled to a divorce." But the master finds that a divorce should be granted because 5 months later, in September 1925, the libellant rented an apartment in Harrisburg, where his work required him to live, and wrote to the respondent inviting her to live with him there. Her answer may be construed as a refusal to join him.

It cannot be doubted that it is the duty of a wife to live with her husband at such reasonable place which he can, according to his means, provide as a home. Since it is the obligation of the husband to provide a home, his choice in the matter is controlling, if it is exercised in good faith: MacDonald v. MacDonald, 108 Pa. Superior Ct. 80. If the husband's business requires him to change his home and he provides another suitable place of residence, and his wife refuses to accompany him, without cause, her refusal constitutes a desertion for which a divorce would be decreed: Beck v. Beck, 163 Pa. 649; Buys v. Buys, 56 Pa. Superior Ct. 338, 341; Sharp v. Sharp, 65 Pa. Superior Ct. 181.

We have determined that the separation which occurred on April 26, 1925, was not desertion by the wife but was consented to by the husband. When parties have separated by mutual consent or when by their action the separation has become consentable, either of them may put an end to such status by giving notice to the other that such consent is withdrawn and making a bona fide offer to resume marital relations. If the other party persists in a state of such separation, without sufficient cause, he or she thenceforth occupies the position of quitting cohabitation of his or her own motion: Kurniker v. Kurniker, 94 Pa. Superior Ct. 257, 261; and changes the status of consentable separation into wilfull and malicious desertion: Cahill v. Cahill, 91 Pa. Superior Ct. 147.

Assuming, but not deciding, that the libellant herein did in September 1925 make a bona fide request to his wife to live with him in the apartment at Harrisburg and that she refused, without justification, to live with him, these facts would establish a desertion by her at that time but would not sustain the ground of divorce alleged in the amended libel, viz., desertion on April 26, 1925. A court should grant a divorce "only for the very cause set forth in the libel, and fully sustained by the testimony": Moses v. Moses, 77 Pa. Superior Ct. 154. Hence, in an action for divorce on the ground of desertion, the date of the desertion as averred in the libel must be proved as alleged. Proof of desertion at some other time is insufficient: Brown v. Brown, 47 Pa. C. C. 181; Scheffey v. Scheffey, 4 D. & C. 716; Goldsmith v. Goldsmith, 84 Pa. Superior Ct. 430.

"It seems clear that the evidence in this case is not legally sufficient to establish the ground of divorce alleged in the [amended] libel. . . . It may be a hardship upon the libellant to withhold it. But the court has no power to grant it except upon legal and adequate evidence. It is only when resulting from legally correct methods of procedure that a conclusion can be accepted as legally right": Border v. Border, 21 Dist. R. 749, 751.

Since the libellant has not established the ground of divorce alleged in the amended libel, the exceptions to the master's report must be sustained to the extent herein indicated. But we will not summarily dismiss the libel. The libellant in his original libel charged desertion by his wife in September 1925. Possibly he may desire to amend the libel further, to aver a desertion at that time and to have the cause referred back to the master for further hearing and report. This opportunity will be afforded him.

And now, May 3, 1934, the exceptions to the master's report are sustained to the extent indicated in the opinion filed herewith; this cause is continued for 30 days from this date, with leave to the libellant in the meantime to move to amend his libel and for reference back to the master for rehearing and further report; if libellant does not so proceed within the period designated, the libel will, on motion of the respondent, be dismissed.

From Francis B. Sellers, Carlisle, Pa.