## Hays v. Hays

*Bulleit & Bulleit,* for libellant.

SHEELY, P. J., June 30, 1945.—Libellant has filed exceptions to the report of the master in which it is recommended that the libel be dismissed and a divorce refused. Respondent did not appear to contest the action and there are no facts in dispute.

The parties were married on February 2, 1937, when libellant was 21 years of age and respondent 18 years. Libellant had just completed school but respondent was attending high school. Prior to the marriage they had agreed that libellant would follow the occupation of a fruit grower, and to carry out this purpose libellant's father purchased a fruit farm in this county. Libellant and respondent lived on the farm from March 1938 until about November 1, 1941, when respondent left, except for a period of 11 months from October 1940 until September 1941, when, at respondent's insistence, they lived at Rancocas, N. J., and libellant's mother and sister moved to the farm (libellant's father had died in February 1939). About six weeks after their return to the farm in September 1941, respondent left the home and has refused to return in spite of several requests so to do from libellant.

The only reason assigned for the wife's separation was that she did not like the farm because of the inconveniences and loneliness of farm life and said she did not want to waste her life on a farm—she had been a resident of Burlington, N. J., a city of 15,000 population. When the parties moved to the farm there were no conveniences whatever in the house, but while they

lived there they installed electricity, a pump, and a pipeless furnace. It was due to the wife's dissatisfaction that they went to Rancocas in October 1940, but they later decided to return to the farm.

"It is the duty of a wife to live with her husband in any home provided by him which is reasonably suitable according to his means. The choice of a home by the husband is controlling if made in good faith": Pfeiffer v. Pfeiffer, 154 Pa. Superior Ct. 154, 156 (1943). The learned master was of the opinion that the home provided by libellant in this case was not reasonably suitable according to his means. He construed the word "means" to include wages which the husband might derive from an occupation which he was qualified to follow, and then stated that:

"In view of the fact that he had no training or experience as a fruit grower and did not show that such occupation would produce the equivalent or more remuneration than the jobs available in New Jersey and further that he failed to show that he was unable to follow a gainful occupation in New Jersey, it is our opinion that when libellant returned from New Jersey to Wenksville in 1941 the choice of said home was not made in good faith."

The question of the good faith of libellant in the choice of a home is not involved in this case for several reasons. First, this is not a case where the husband chose a new home to which the wife refused to follow him. The home in this case had been the original home of the parties to which they returned and from which the wife left. Consequently the burden was not upon the husband to prove that the home was suitable according to his means and was selected in good faith, but the burden was upon the wife to justify her separation: Thomas v. Thomas, 133 Pa. Superior Ct. 12, 14 (1938); which she has not done. Secondly, there is no testimony to show that the home was not suitable or that it did not compare favorably with other farm

homes in the county. The mere absence of convenience in a farm home is definitely no justification for the withdrawal of a wife. A wife cannot insist on arbitrary standards of living which she has set for herself: Sharp v. Sharp, 65 Pa. Superior Ct. 181. Thirdly, it is apparent that the wife's real objection was to living in the country because she said she did not want to waste her life on a farm. The view of the learned master would compel libellant to give up his chosen occupation and to accept work whether or not it might be agreeable to him merely because his wife was dissatisfied with life on a farm. It has been repeatedly held that a husband "may lawfully change his residence. The wisdom of such a change is not a subject for the judgment of the court. There would be a serious abridgment of personal liberty if this right were subject to legal review": Monahan v. Auman, 39 Pa. Superior Ct. 150, 153; Buela v. Buela, 33 Dauph. 238, 241. This is even more true of the right of the husband to choose his own occupation.

Even if the good faith of libellant were an issue, which it is not, the fact that the parties had agreed before marriage to take up fruit growing (see Caldwell v. Caldwell, 70 Pa. Superior Ct. 332, and MacDonald v. MacDonald, 108 Pa. Superior Ct. 80), and the fact that libellant has lived there and been a fruit grower nearly all of eight years and has never followed any other occupation, would be strong evidence of his good faith. The evidence clearly shows that respondent wilfully and maliciously deserted libellant because she placed a higher value on material conveniences and pleasures than upon her home and her marriage. If any bad faith is shown it is hers; not his.

The master also points out that the parties had made a collusive agreement to secure a divorce in New Jersey and that there is no evidence that libellant rescinded that agreement. The agreement, fully testified to by libellant, was that respondent should secure a divorce

and libellant would pay half of the cost. He testified he did not comply with the agreement because he was not satisfied with the arrangement for custody of the child, and that there· was no agreement concerning the present action. His refusal to carry out the collusive agreement completely abrogated that agreement.

There is no material variance between the allegation and the proof of the date of the desertion. The allegation was that the desertion occurred "on or about November 1, 1941". The proof showed that the parties returned to the farm "in September 1941", and that the wife left about· six weeks later, which would have been on or about November 1, 1941. This situation is far different from such cases as Goldsmith v. Goldsmith, 84 Pa. Superior Ct. 430 (1925).

And now, June 30, 1945, the exceptions to the report of the master are sustained and a decree in divorce will be entered upon payment of costs.